UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re: Chapter 11

MARS FX US LP, Case No.: 26-22287 (KYP)

Debtor.

-----------------------------------------------------------------x

# DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF MARS FX US LP

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL TO THE BANKRUPTCY COURT BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AT THIS TIME. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE § 1125.**

**RIMON P.C.**
Attorneys for the Debtor
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers
Haley L. Trust
Courtney Roman

Dated: As of August 3, 2026

**TABLE OF CONTENTS**

I. INTRODUCTION AND GENERAL BACKGROUND ........ 2
A. PURPOSE AND EFFECT OF THE PLAN ........ 5
B. PRE-PETITION BACKGROUND ........ 5
1. Nature of the Debtor's Business Assets and Operational Structure ........ 5
2. The Decline in the Debtor's Business ........ 7
C. JOLS INTENTIONS REGARDING COORDINATION BETWEEN THE CHAPTER 11 CASE AND THE CHAPTER 15 BANKRUPTCY CASES ........ 11
D. OVERVIEW OF CHAPTER 11 ........ 11
E. CONFIRMATION AND CONSUMMATION OF THE PLAN ........ 12
F. RISK FACTORS ........ 12
II. BACKGROUND OF THE CHAPTER 11 CASE ........ 12
A. BANKRUPTCY PETITION ........ 12
B. MOTIONS AND ORDERS ........ 12
1. Application for Entry of an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Noticer Thereof ........ 13
2. Debtor's Application for Retention of Counsel ........ 13
C. APPOINTMENT OF THE CREDITORS' COMMITTEE ........ 13
1. Creditors' Committee Application for Retention of Counsel ........ 13
D. CLAIMS PROCESS AND CLAIMS BAR DATE ........ 14
1. Section 341(a) Meeting of Creditors ........ 14
2. Schedules and Statements ........ 14
3. General and Government Bar Dates ........ 14
III. SUMMARY OF PLAN ........ 15
A. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ........ 15
1. Administrative Claims ........ 15
(a) General Administrative Claims ........ 15
(b) Fee Claims ........ 15
2. Priority Tax Claims ........ 15
3. Fees Payable to the United States Trustee ........ 16
B. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........ 16
1. Administrative and Priority Tax Claims ........ 16

2. Summary of Classification and Treatment of Classified Allowed Claims and Interests Against the Debtor ..... 16
3. Classification and Treatment of Claims ..... 17
4. Special Provision Governing Unimpaired Claims ..... 18
C. ACCEPTANCE OR REJECTION OF THE PLAN ..... 19
1. Presumed Acceptance of Plan ..... 19
2. Voting Classes ..... 19
3. Acceptance by Impaired Classes of Claims ..... 19
D. MEANS FOR IMPLEMENTATION OF THE PLAN ..... 19
1. Source of Funds ..... 19
2. Establishment of Litigation Trust ..... 19
(a) Appointment of Litigation Trustee ..... 19
(b) Bond ..... 19
(c) Litigation Trust Oversight Committee ..... 19
(d) Governance ..... 20
(e) Funding of the Litigation Trust Expenses ..... 20
(f) Funding of Litigation Trust ..... 20
(g) Transfer of Estate's Assets to Litigation Trust ..... 20
(h) Purpose of the Litigation Trust ..... 20
(i) Federal Income Tax Treatment of the Litigation Trust ..... 20
(j) Dissolution of Litigation Trust and Discharge of Litigation Trustee ..... 21
(k) Indemnification ..... 21
3. Powers and Obligations of the Litigation Trustee ..... 21
4. Dissolution of the Debtor ..... 23
E. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 23
1. Assumption and Rejection of Executory Contracts and Unexpired Leases ..... 23
2. Claims Based on Rejection of Executory Contracts or Unexpired Leases ..... 23
3. Modifications, Amendments, Restatements or Other Agreements ..... 24
4. Reservation of Rights ..... 24
F. PROVISIONS FOR GOVERNING DISTRIBUTION ..... 24
1. Distributions for Allowed Claims ..... 24
2. Distributions on Account of Claims Allowed After the Effective Date ..... 25
(a) Payments and Distributions on Disputed Claims ..... 25

(b) Special Rules for Distributions to Holders of Disputed Claims .......... 25
3. Delivery and Distributions and Undeliverable or Unclaimed Distributions .......... 25
(a) Delivery of Distributions in General .......... 25
(b) Minimum Distributions .......... 25
(c) Undeliverable Distributions and Unclaimed Property .......... 26
4. Compliance with Tax Requirements/Allocations .......... 26
5. Timing and Calculation of Amounts To Be Distributed .......... 26
6. Setoffs .......... 27
G. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS .......... 27
1. Resolution of Disputed Claims .......... 27
(a) Resolution of Disputed Claims .......... 27
(b) Procedure for Omnibus Objections to Claims .......... 27
(c) Claims Estimation .......... 28
(d) Deadline to File Objections to Claims .......... 28
2. Claims Allowance .......... 28
3. Controversy Concerning Impairment .......... 29
4. Disallowance of Claims .......... 29
H. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .......... 29
1. Conditions Precedent to Confirmation .......... 29
2. Conditions Precedent to Consummation and Occurrence of Effective Date .......... 30
3. Waiver of Conditions .......... 30
4. Effect of Non-Occurrence of Conditions to Consummation .......... 30
I. SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS .......... 30
1. Compromise and Settlement .......... 30
2. Exculpation .......... 31
3. Preservation of Rights of Action / Reservation of Rights .......... 32
(a) Maintenance of Causes of Action .......... 32
(b) Preservation of All Causes of Action Not Expressly Sold, Settled, or Released .......... 33
4. Preservation of Insurance .......... 33
5. Injunction .......... 33
J. RETENTION OF JURISDICTION .......... 34

K. MISCELLANEOUS PROVISIONS ... 36
1. Payment of Statutory Fees ... 36
2. Quarterly Reports ... 36
3. Modification of Plan ... 36
4. Revocation of Plan ... 36
5. Successor and Assigns ... 37
6. Reservation of Rights ... 37
7. Further Assurances ... 37
8. Severability ... 37
9. Service of Documents ... 38
IV. SOLICITATION AND VOTING PROCEDURES ... 38
A. RECORD DATE ... 38
B. VOTING DEADLINE ... 39
C. SOLICITATION PROCEDURES ... 39
1. Solicitation Package ... 39
2. Distribution of the Solicitation Package ... 40
D. VOTING AND TABULATION PROCEDURES ... 40
1. Ballot Tabulation ... 40
V. CONFIRMATION PROCEDURES ... 40
A. CONFIRMATION HEARING ... 40
1. Confirmation Hearing Date ... 41
2. Plan Objection Deadline ... 41
3. Objections must be served on all of the following parties: ... 42
B. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ... 42
1. Best Interests of Creditors Test / Liquidation Analysis ... 43
2. Feasibility ... 44
3. Acceptance by Impaired Classes ... 44
C. RISK FACTORS ... 45
D. CONTACT FOR MORE INFORMATION ... 45
VI. PLAN RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ... 45
A. GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS ... 45
1. Parties in Interest May Object to the Classification of Claims and Interests ... 45
2. Failure to Satisfy Vote Requirement ... 46

3. The Debtors May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed ..... 46
4. Litigation Trustee May Object to the Amount of Classification Claim ..... 46
5. Risk of Non-Occurrence of the Effective Date ..... 46
6. Risks Affecting Potential Recoveries ..... 47
B. RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS ..... 47
C. DISCLOSURE STATEMENT DISCLAIMER ..... 47
1. Information Contained Herein Is For Soliciting Votes ..... 47
2. This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission ..... 47
3. This Disclosure Statement May Contain Forward Looking Statements ..... 47
4. No Legal or Tax Advice is Provided to You by This Disclosure Statement ..... 48
5. No Admissions Made ..... 48
6. Failure to Identify Litigation Claims or Projected Objections ..... 48
7. No Waiver of Right to Object or Right to Recover Transfers and Assets ..... 48
8. Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update ..... 48
D. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ..... 49
VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..... 49
VIII. CONCLUSION AND RECOMMENDATION ..... 49

## IMPORTANT DATES

- Voting Deadline by which Ballots must be received: ______________, 2026, at 4:00 p.m. (prevailing Eastern Time)
- The address to which Ballots must be sent: Rimon P.C., 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753
- Deadline by which to file and serve objections to Confirmation of the Plan: ______________, 2026, at 4:00 p.m. (prevailing Eastern Time)
- Hearing on Confirmation of the Plan: ______________, 2026, at __:00 a.m. (prevailing Eastern Time)

THE VOTING AGENT MUST ACTUALLY RECEIVE YOUR BALLOT ON OR BEFORE THE ABOVE STATED VOTING DEADLINE.

THE DEBTOR CANNOT PROVIDE ANY ASSURANCE THAT THE DISCLOSURE STATEMENT (AND THE EXHIBITS) ULTIMATELY APPROVED IN THE CHAPTER 11 CASE (A) WILL CONTAIN ANY OF THE TERMS IN THIS CURRENT DOCUMENT, OR (B) WILL NOT CONTAIN DIFFERENT, ADDITIONAL TERMS THAT DO NOT APPEAR IN THIS DOCUMENT.

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE FINAL BANKRUPTCY COURT APPROVAL OR THE BANKRUPTCY COURT'S RECOMMENDATION ON THE MERITS OF THE DEBTOR'S PLAN OF REORGANIZATION.**

## I. INTRODUCTION AND GENERAL BACKGROUND[1]

On March 23, 2026 (the "Petition Date"), Mars FX US LP (the "Debtor"), filed a voluntary petition for relief (the "Chapter 11 Case") with the United States Court for the Southern District of New York (the "Bankruptcy Court"), under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). The Debtor submits this Disclosure Statement pursuant to Bankruptcy Code § 1125, to Holders of Claims and Interests in connection with: (a) the solicitation of votes to accept or reject *The Plan of Liquidation Under Chapter 11 of Bankruptcy Code of Mars FX US LP*, as the same may be amended from time to time (the "Plan"), and (b) the Hearing to confirm the Plan, which is scheduled for ______________, 2026, at __:00 a.m. (prevailing Eastern Time) (the "Confirmation Hearing"). A copy of the Plan is annexed hereto as Exhibit A and incorporated herein by reference.

By order entered ______________, 2026 (the "Disclosure Statement Approval Order"), the Bankruptcy Court approved this Disclosure Statement, in accordance with Bankruptcy Code § 1125, as containing "adequate information" to enable a hypothetical, reasonable creditor or investor typical of Holders of Claims and Interests against the Debtor to make an informed judgment as whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.

The Disclosure Statement Approval Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan, and for filing objections to confirmation of the Plan, the Record Date for voting purposes, and the applicable standards for tabulating Ballots. In addition, detailed voting instructions accompany each Ballot. Each Holder of a Claim or Interest entitled to vote on the Plan should read this Disclosure Statement and all Exhibits hereto including the Plan, the Disclosure Statement Approval Order, and the instructions accompanying the Ballot in their entirety before voting on the Plan. These documents contain important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. No solicitation of votes may be made except pursuant to this Disclosure Statement and Bankruptcy Code § 1125. In voting on the Plan, Holders of Claims and Interests should not rely on any information relating to the Debtor, other than that contained in this Disclosure Statement, the Plan, and all exhibits and appendices hereto and thereto.

The Debtor may file a plan supplement (the "Plan Supplement") containing certain documents relating to the Plan. The Plan Supplement may be filed as early as practicable but in no event less than fifteen (15) days before the deadline to object to confirmation of the Plan established by the Disclosure Statement Approval Order. Parties may obtain a copy of the Plan and Plan Supplement

[1] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

(i) from counsel to the Debtor, (ii) counsel to the Creditors' Committee, or (iii) for a fee via PACER at www.pacer.uscourts.gov.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO THE DEBTOR'S CREDITORS. THE DEBTOR RECOMMENDS THAT HOLDERS OF CLAIMS AND INTERESTS ELIGIBLE TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

A GLOSSARY OF DEFINED TERMS UTILIZED IN THE PLAN AND DISCLOSURE STATEMENT IS SET FORTH IN ARTICLE I.B. OF THE PLAN.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY.

IT IS DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER. RATHER, HOLDERS OF CLAIMS AND INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE LITIGATION TRUSTEE MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN WHETHER OR NOT THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF

SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.

THE DEBTOR HAS REVIEWED THE FINANCIAL AND CLAIM INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTOR HAS USED ITS REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS INFORMATION, THE FINANCIAL AND CLAIM INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT WAS SOLELY OBTAINED FROM THE FILINGS IN THE CHAPTER 11 CASE AND HAS NOT BEEN AUDITED.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE PLAN AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF THE DEBTOR'S ASSETS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VI HEREIN, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

## A. PURPOSE AND EFFECT OF THE PLAN

The Plan provides for the vesting of the Debtor's Assets in a Litigation Trust established for the purposes of liquidating the Assets and making distributions pursuant to the Plan. The proceeds from the liquidation of the Assets will be used to make all distributions pursuant to the terms of the Plan. The Litigation Trustee, as applicable, may pursue certain Causes of Action to collect additional Cash for distribution pursuant to the terms of the Plan.

## B. PRE-PETITION BACKGROUND

### 1. Nature of the Debtor's Business Assets and Operational Structure

The Debtor is a Delaware limited partnership. The Debtor, as the "Onshore Feeder," was the vehicle in the U.S. as part of a cross-border investment structure comprised of the Debtor and Mars FX Master Ltd (the "Master Fund"), and MARS FX INTERNATIONAL LTD (the "Offshore Feeder" and, together, with the Master Fund, the "Cayman Entities"). This structure was established to raise capital from U.S. investors through the Debtor, and non-U.S. investors through the Offshore Feeder, for foreign exchange trading. The Debtor owns 75.64% of the Master Fund according to a shareholding register dated January 31, 2025.

Novus Capital Partners LLC ("Novus" or "General Partner") is the General Partner of the Debtor.

The Debtor was operationally and commercially intertwined with the Cayman Entities and as such, in addition to Novus being the General Partner of the Debtor, Novus acted as the investment manager of the Cayman Entities. Notably, Novus is controlled by members David Choi, Ashish Patel, Patrick Hofmann, and Jae Choi, each with a 25 % membership interest.

The Debtor and the Cayman Entities are joint claimants in ongoing proceedings brought against Tech RealFX Ltd ("TRFX") in the British Virgin Islands (BVIHC (COM) 2025/0283) seeking recovery of the Debtor's and the Cayman Entities' combined alleged platform position (the "Platform Balance" or the "BVI Proceedings").

The BVI proceedings allege that between August 3, 2020 and August 1, 2024, the Debtor and the Cayman Entities collectively invested approximately $277,371,000 into the TRFX trading structure (the "TRFX Investment Amount").

On November 11, 2024, a withdrawal request was submitted to TRFX and Labuan-registered 4XHUB Limited ("4XHUB") in relation to the TRFX Investment Amount, which, inclusive of purported profits, amounted to approximately $566,730,000 which was claimed as the outstanding Platform Balance at that date, and is consequently the amount claimed in the BVI Proceedings.

Capital was raised through the Debtor and Offshore Feeder and ultimately deployed into the same trading arrangement. The funds were understood to be channeled from the Debtor and Offshore Feeder through various accounts and ultimately to accounts held by TRFX.

The bank-account materials on file identify accounts in the name of the Debtor at JPMorgan Chase Bank in New York, and The Northern Trust International Banking Corporation ("Northern Trust") in New Jersey. The Debtor transferred $122,336,000 from these accounts to Bank of Communications (Hong Kong) Limited ("BOCOM") between 2 August 2020 and 25 February 2025. From 7 April 2022 to 1 August 2024, the Debtor transferred $131,250,000 from Northern Trust to accounts held with Legacy Trust Company Limited ("Legacy Trust") in Hong Kong.

It is understood that the funds then flowed from BOCOM and Legacy Trust to TRFX accounts, also in Hong Kong. The flow of funds thereafter from the TRFX accounts is to be confirmed, however preliminary investigations suggest that certain balances to which the Debtor and the Cayman Entities may be entitled are held at broker accounts in the names of TRFX and associate entities, 4XHUB and Treal Capital Limited ("Treal").

Broker accounts in the names of TRFX, 4XHUB and Treal were held at Equiti Capital UK Limited ("Equiti") in the UK and GO Markets Pty Ltd ("GO Markets") in Australia (the "Broker Accounts"). Investigations are being undertaken as to the entity which held beneficial ownership of the TRFX accounts with BOCOM and Legacy Trust in Hong Kong, and with Equiti and Go Markets. This is due to there being identically named companies for TRFX and Treal in BVI and Hong Kong, and for 4XHUB in Labuan and Hong Kong.

TRFX, 4XHUB and Treal are all understood to be ultimately controlled by an individual named Mr. Tan Jit Chun ("Mr. Tan") through direct and indirect (via his wife, Mrs. Ing Yong Wee) ownership and directorships.

Trading from the Broker Accounts was understood to take place through a technology platform operated by TRFX.

(a) Service Providers and Custody Discrepancies

The BVI Proceedings also highlight further issues in identifying the legal custodian of the Platform Balance. The rights to the Platform Balance are understood to have been subject to an assignment agreement which affects the recovery of such amounts.

In this regard, the rights to the Platform Balance are understood to have been assigned to 4XHUB in accordance with an assignment agreement dated 7 February 2024 between Novus, the Master Fund, TRFX and 4XHUB (the "Assignment Agreement"), with such funds not moving to 4XHUB in practice.

In addition, there are also unresolved questions as to the website domain which hosted the trading platform and through which clients could invest and monitor their investments. The domain appears to have moved from TRFX to another entity (the identity of which is to be confirmed) in or about October 2022, which is suspected to have potentially impacted oversight and control of the trading platform.

Different parties have advanced materially inconsistent accounts regarding authority and operational control. By way of example, the BVI Proceedings allege that an individual named Mr. "Jackie" Chong Cheong Sin ("Mr. Chong") acted for TRFX in documenting the relevant arrangements (including the trading platform and direction of funds), while TRFX denies that he had authority to act on its behalf, and denies that it received or held client monies. This has a bearing on records recovery, clarification of the custody chain, and the controlling parties at the relevant times.

The Debtor and Cayman Entities also share overlapping counterparties, service providers and records. For example, the Debtor and Cayman Entities were both audited by U.S. and Cayman member firms of Deloitte & Touche LLP ("Deloitte") and administered by subsidiaries of Krypton Fund Services Ltd ("Krypton").

The Debtor's relevant records are dispersed across multiple third parties, which are required to provide insight into the financial affairs of the Debtor and the Cayman Entities. Krypton, as the administrator, is a potential source of investor, capital-account and redemption information. Deloitte member firms in the U.S. and Cayman are a potential source of audit files, broker confirmations and related correspondence. Corporate service providers are likely sources of formation, governance and statutory records. Equiti and GO Markets are expected to hold broker-side records. BOCOM and Legacy Trust are key sources for transfer records. TRFX, 4XHUB, Treal, and current or former advisers may hold platform records, statements, onboarding material and related communications.

2. The Decline in the Debtor's Business

(a) The Debtor's Investment and Withdrawal Issues

From 2020 onward, substantial sums associated with the Debtor were transferred, on behalf of the Master Fund, into the trading arrangements then said to be in place with TRFX. Those transfers were initially made to an account at BOCOM and later through Legacy Trust.

In early 2024, the Debtor came to understand that TRFX was not a regulated entity. On 18 January 2024, 4XHUB was presented as a regulated alternative, and on 6 February 2024, the aforementioned Assignment Agreement was entered into in connection with an intended shift of the claimed platform position.

On November 11, 2024, Novus, on behalf of the Master Fund, submitted the Withdrawal Request to TRFX and 4XHUB. The Withdrawal Request required distribution of the full Platform Balance by January 30, 2025.

The Withdrawal Request demanded withdrawal in full of all 2,250 trading accounts held in the name of the Master Fund, at that time totaling US $566,730,000.

(b) BVI and Hong Kong Enforcement Steps

Payment was not made by the date stipulated in the Withdrawal Request, January 30, 2025. By letter dated January 23, 2025, TRFX stated that it had initially projected payment on January 20, 2025, however attributed the delay to an anti-money laundering investigation in Hong Kong while also stating that the monies held for the Master Fund remained securely with the brokers and trading would continue.

On January 27, 2025, Novus informed investors that the Debtor and the Cayman Entities could no longer operate in the normal course and that wind-down steps were being taken. On January 31, 2025, the Cayman Entities resolved to suspend redemptions and payment of redemption proceeds with immediate effect.

On March 4, 2025, Novus sent a letter to all of the Debtor's Limited Partners (the "Subordination Letter") confirming Novus or its principals were in control of a total of $57,500,000 (the "Novus Related Party Investments") of investments in the Debtor made by Novus, its principals, and parties related to Novus's principals. The Subordination Letter further confirmed that the Novus Related Party Investments would be subordinated to the repayment of all of the Debtor's other Limited Partners.

Following the continuing non-payment, statutory demands were served on February 17, 2025, on the BVI and Hong Kong entities.

Given TRFX's continued failure to repay the Master Fund, on February 17, 2025, the Master Fund served a statutory demand (the "BVI Statutory Demand") on TRFX (BVI) in the amount of US$26,821,550.97 (being cash sums believed to be in the Master Fund's accounts and the sum which was supposed to be paid on January 20, 2025). The Master Fund also served a statutory demand (the "Hong Kong Statutory Demand") on Tech RealFX Limited (Hong Kong) ("TRFX HK").

On February 28, 2025, TRFX filed an application with the BVI Court seeking orders that the BVI Statutory Demand be set aside (the "Set Aside Application"), supported by an affirmation signed by Mr. Tan dated February 28, 2025. The grounds for the Set Aside Application were that:

i. the debt payable was disputed as the relevant agreements were executed by Mr. Chong who did not have authority to do so;

ii. certain correspondence and third-party broker statements provided by Mr. Chong and relied upon by the Master Fund were forged;

iii. the debt was not payable because the requisite notice period had not elapsed since the service of the BVI Statutory Demand;

iv. that there was no evidence of transfer of funds from the Master Fund, and

v. the parties had agreed to arbitrate any disputes.

Correspondence was exchanged between Ogier, Cayman legal counsel for the Debtor and the Cayman Entities, on March 7, 2025, and Appleby (then counsel for TRFX), which reasserted similar issues.

On March 21, 2025, the Set Aside Application was discontinued.

Then, on June 26, 2025, the BVI Proceedings were commenced by the Debtor and the Cayman Entities in relation to the Platform Balance.

On November 10, 2025, TRFX filed its defense in relation to the BVI Proceedings (the "Defense"). In broad terms, TRFX disputes the authenticity or authority underlying key documents, denies receipt or custody of client monies, and advances a materially different account of the trading history and balances.

The BVI Proceedings remain ongoing.

With regard to the disputes arising as a result of the Defense, the Debtor and the JOLs (as defined below) sought an extension to the deadline for the claimants' response, which was subsequently agreed, and the deadline has been extended by three months to June 8, 2026 (subject to further extensions or orders).

Since those appointments, the JOLs (as defined below) have been engaged in securing books and records, issuing preservation notices, liaising with service providers and counterparties, and coordinating counsel across the United States, Cayman, the British Virgin Islands, and Hong Kong.

(c) Liquidation of the Cayman Entities and Chapter 15 Filings of Bankruptcy Cases in the United States Bankruptcy Court for the Southern District of New York

(i) Background Leading to the Liquidation of the Cayman Entities in the Cayman Islands

The Cayman Entities, along with the Debtor, were engaged in foreign exchange trading, with the purpose of serving as offshore and onshore feeder funds, as discussed above.

The Cayman Entities' directors were David Jae Jun Choi and Ashish Nanubhai Patel, two Novus partners. It was understood that Novus held complete control over the Cayman Entities prior to the commencement of the Cayman Liquidation Proceedings.

As discussed above, the Cayman Entities, along with the Debtor, are joint claimants in the BVI Proceedings.

(ii) Filing of Cayman Liquidation Proceeding and Appointment of Foreign Representatives

On January 13, 2026, the Cayman Entities were placed into voluntary liquidations by special resolutions passed by the voting shareholders of each respective company, before the Grand Court of the Cayman Islands Financial Services Division (the "Cayman Grand Court") commenced pursuant to Section 124 of the Companies Act (2026 Revision) cause number FSD 46 of 2026 (JAJ) and cause number FSD 46 of 2026 (JAJ) (together, the "Cayman Liquidation Proceedings").

Subsequently, on March 6, 2026, the Grand Court of the Cayman Islands (the "Grand Court") ordered that the winding up of the Cayman Entities be continued under the supervision of the Grand Court, and that Luke Furler and Tan Kim Han (Joffrey), both of Quantuma (Singapore) Pte Ltd, and Owen Walker of R&H Restructuring (Cayman) Ltd, be appointed as Joint Official Liquidators of the Cayman Entities (the "JOLs").

The Cayman Liquidation Proceedings remain pending in the Cayman Grand Court.

(iii) Filing of Chapter 15 Bankruptcy Cases and Related Motion Practice

On March 23, 2026, the Cayman Entities each filed voluntary petitions under Chapter 15 of the Bankruptcy Code for recognition of a foreign proceeding (the "Chapter 15 Petitions") in this Bankruptcy Court (Case Nos. 26-22288 (KYP) and 26-22289 (KYP)) commencing the two (2) chapter 15 bankruptcy cases (the "Chapter 15 Bankruptcy Cases").

In addition, on March 23, 2026, the Cayman Entities each filed the following: (a) motions of the JOLs as foreign representatives ("Foreign Representatives") for an order for recognition of foreign main proceeding and certain related relief pursuant to Bankruptcy Code sections 105(a), 1504, 1508, 1509, 1510, 1512, 1515, 1516, 1517, and 1520 and Bankruptcy Rules 2002 and 9007 (ECF Doc Nos. 3 (Case No. 26,22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Recognition Motions"); (b) the Joint Declarations of Luke Anthony Furler, Tan Kim Han (Joffrey), and Owen Walker in Support of (i) Motion of Foreign Representatives for Order of Recognition of Foreign Main Proceeding and (ii) Voluntary Chapter 15 Petition (ECF Doc Nos. 4 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Joint Declarations"); (c) declarations of Christopher Levers as Cayman Islands counsel to the Cayman Entities in support of the motions for (i) recognition of foreign main proceedings, (ii) recognition of the Foreign Representatives, and (iii) related relief under chapter 15 of the Bankruptcy Code (ECF Doc Nos. 5 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Levers Declarations"); (d) Ex Parte Applications for Provisional Relief Pursuant to Sections 105(a), 1519, and 1521(a)(7) of the Bankruptcy Code to (i) apply Bankruptcy Code sections 362 and 1530 to the Cayman Entities and their property in the United States on a provisional basis until the Bankruptcy Court makes a final ruling on the Motions for Recognition and (ii) tolling all applicable statutes of limitations periods pursuant to Bankruptcy Code § 108(a) pending the entry of the order approving the Recognitions Motions (ECF Doc Nos. 6 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Ex Parte Applications"); and (e) motions pursuant to Bankruptcy Rules 2002 and 9007 requesting entry of an order (i) scheduling recognition hearings and (ii) approving form and manner of service (ECF Doc Nos. 7

(Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Scheduling Recognition Hearings Motions").

On March 26, 2026, the Bankruptcy Court entered orders granting the Ex Parte Applications (ECF Doc Nos. 6 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)).

On March 30, 2026, the Bankruptcy Court entered orders granting the Scheduling Recognition Hearings Motions (ECF Doc Nos. 12 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)), scheduling the hearings to be held on April 23, 2026. At the hearing conducted on April 23, 2026, the Bankruptcy Court granted the Recognition Motions and on April 27 2026, the Bankruptcy Court entered the orders approving the Recognition Motions (ECF Doc Nos. 20 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)).

On May 12, 2026, the Cayman Entities also filed motions for an order directing the joint administration of the Cayman Entities' bankruptcy cases pursuant to Bankruptcy Rule 1015(b) (ECF Doc Nos. 22 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Joint Administration Motions"). On May 13, 2026, the Bankruptcy Court entered orders approving the Joint Administration Motions (ECF Doc Nos. 23 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)).

The Chapter 15 Bankruptcy Cases remain pending before the Bankruptcy Court.

(d) Appointment of the Chief Restructuring Officer

By resolution of the General Partner dated March 16, 2026 (the "General Partner Resolution"), Luke Anthony Furler, of the JOLs, was appointed as the Debtor's Chief Restructuring Officer ("CRO"). The General Partner Resolution vested authority in the CRO to file and prosecute the Debtor's chapter 11 case with an aim to confirmation of a plan of liquidation.

## C. JOLS INTENTIONS REGARDING COORDINATION BETWEEN THE CHAPTER 11 CASE AND THE CHAPTER 15 BANKRUPTCY CASES

It is the intention of the JOLs to coordinate the administration of the Chapter 11 Case and the Chapter 15 Bankruptcy Cases, including all investigations and prosecutions of actions, to increase judicial efficiency and economy.

## D. OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code, although individuals may also file under chapter 11. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy petition date. Consummating a plan is the principal objective of a chapter 11 case. The Bankruptcy Court's confirmation of a plan binds

the debtor, any person acquiring property under the plan, any creditor or interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, Bankruptcy Code § 1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable creditor or investor to make an informed judgment regarding acceptance of the chapter 11 plan. This Disclosure Statement is being submitted in accordance with the requirements of Bankruptcy Code § 1125.

### E. CONFIRMATION AND CONSUMMATION OF THE PLAN

It will be a condition to Confirmation of the Plan that all provisions, terms, and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan. The Plan will be consummated on the Effective Date, when all of the Debtor's right, title, and interest in the Assets, including, without limitation, all Avoidance Actions and Causes of Action shall transfer to the Litigation Trustee. The Litigation Trustee will liquidate the Assets and, at the Litigation Trustee's discretion, may commence Avoidance Actions or Causes of Actions, to make distributions to Holders of Allowed Claims and Interests.

### F. RISK FACTORS

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN SECTION VI HEREIN ENTITLED, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

## II. BACKGROUND OF THE CHAPTER 11 CASE

### A. BANKRUPTCY PETITION

On March 23, 2026, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

### B. MOTIONS AND ORDERS

During the Chapter 11 Case, the Debtor filed additional motions and applications.

1. Application for Entry of an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Noticer Thereof

On April 6, 2026, the Debtor filed the *Debtor's Application for Entry of an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (ECF Doc. No. 10) (the "Bar Date Application") pursuant to Bankruptcy Code §§ 501, 502 and 503, Bankruptcy Rules 3002 and 3003, and Rule 3003-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and Second Amended Procedural Guidelines for Filing Requests for Bar Orders in the United States Bankruptcy Court for the Southern District of New York, dated November 24, 2009, established by the Board of Judges for the Southern District of New York (M-453, amended M-386) (the "Procedural Guidelines"). On April 27, 2026, the Court granted the Debtor's Bar Date Application (ECF Doc. No. 23).

2. Debtor's Application for Retention of Counsel

On May 14, 2026, the Debtor filed its *Application for an Order Authorizing the Retention and Employment of Rimon P.C., as Counsel to the Debtor* (ECF Doc. No. 29). On May 29, 2026, the Bankruptcy Court entered an order granting that application (ECF Doc. No. 40).

3. Bankruptcy Rule 2004 Application

On July 30, 2026, in aid of the ongoing investigation into potential Causes of Action, the Debtor filed an application pursuant to Bankruptcy Rule 2004 seeking an order permitting the Debtor to take discovery from the Debtor's former auditor, Deloitte and Touche LLP (ECF Doc. No. 62). On July 31, 2026, the Bankruptcy Court entered an order granting that application (ECF Doc. No. 63).

C. APPOINTMENT OF THE CREDITORS' COMMITTEE

On April 27, 2026, the United States Trustee filed the *Notice of Appointment of Official Committee of Unsecured Creditors* at ECF Doc. No. 22, appointing the following unsecured creditors to serve on the Official Committee of Unsecured Creditors: (i) Gregory M. Dell; (ii) Hongtech Holdings LLC; (iii) MFT MGR LLC; (iv) Jorge A. Castellano; and (v) Steven Fuhrman (the "Creditors' Committee").

1. Creditors' Committee Application for Retention of Counsel

On June 1, 2026, the Creditors' Committee filed an *Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Lowenstein Sandler LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of May 7, 2026* (ECF Doc. No. 42). On June 3, 2026, the Bankruptcy Court entered an order granting that application (ECF Doc. No. 47).

D. CLAIMS PROCESS AND CLAIMS BAR DATE

In chapter 11, claims against a debtor are established either as a result of being listed in a debtor's schedules of assets and liabilities or through assertion by a creditor in a timely filed proof of claim. Claims asserted by a creditor are either allowed or disallowed. If allowed, a claim would be recognized and treated pursuant to a plan; if disallowed, a creditor would have no right to obtain any recover on or otherwise enforce the claim against the debtor.

1. Section 341(a) Meeting of Creditors

On April 28, 2026, the United States Trustee conducted and closed the Section 341(a) Meeting of Creditors in the Chapter 11 Case.

2. Schedules and Statements

On April 6, 2026, the Debtor filed with the Bankruptcy Court its Declaration Under Penalty of Perjury for Non-Individual Debtors (Form 202), Summary of Assets and Liabilities and Certain Statistical Information (Form 106Sum), Schedules A/B, Schedule D, Schedule E/F, Schedule G, Schedule H, and Statement of Financial Affairs (ECF Doc. No. 11) (collectively, the "Schedules").

On April 27, 2026, the Debtor filed its Declaration Pursuant to Local Bankruptcy Rule 1009-1(a), Amended Schedule A/B, and Amended statement of Financial Affairs (ECF Doc. No. 21) (the "First Amended Schedules").

Subsequently, after obtaining additional information regarding amounts due to Limited Partners and in consultation with the Creditors' Committee, the Debtor determined that it was necessary to further amend its schedules. Accordingly, on May 26, 2026, the Debtor filed its Declaration Purusant to Local Bankruptcy Rule 1009-1(a) and Amended Schedule E/F (ECF Doc. No. 35) (the "Second Amended Schedules" and, together with the First Amended Schedules, the "Amended Schedules").

Copies of the Schedules and Amended Schedules are available with the Clerk of the Bankruptcy Court. The Debtor has reserved its rights to amend the Schedules during the Chapter 11 Case.

3. General and Government Bar Dates

On April 27, 2026, the Court entered an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving Forms and Manner of Notice Thereof (ECF Doc. No. 23). All Proofs of Claims must be Filed in writing or electronically on the Court's website at www.nysb.uscourts.gov so that it is received on or before June 15, 2026 (the "General Bar Date"). All Proofs of Claim by a governmental unit must be Filed in writing or electronically on the Court's website at www.nysb.uscourts.gov so that it is received on or before September 21, 2026 (the "Government Claims Bar Date").

# III. SUMMARY OF PLAN

## A. ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### 1. Administrative Claims

#### (a) General Administrative Claims

Except as otherwise provided herein and subject to Bankruptcy Code §§ 328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Litigation Trust; or (d) as otherwise ordered by the Bankruptcy Court.

Except as otherwise provided in Article II.A of the Plan, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served prior to the General Administrative Claims Bar Date. Holders of General Administrative Claims that do not File and serve such a request by the applicable General Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against the Debtor, its Estate and the Litigation Trust and such General Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtor, the Litigation Trustee and the requesting party within thirty (30) days after the General Administrative Claims Bar Date.

#### (b) Fee Claims

Retained Professionals, including without limitation other entities asserting a Fee Claim for services rendered before the Effective Date, must File and serve on the Debtor, the Litigation Trustee, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than sixty (60) days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Debtor, the Litigation Trustee, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Fee Claim.

### 2. Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Litigation Trustee and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Litigation Trustee, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code § 1129(a)(9)(C).

3. Fees Payable to the United States Trustee

The Litigation Trust shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717, on all disbursements made by the Debtor, including the transfer of assets to the Litigation Trust, until the entry of a Final Order closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

B. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

1. Administrative and Priority Tax Claims

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.C of the Plan.

2. Summary of Classification and Treatment of Classified Allowed Claims and Interests Against the Debtor

The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1). The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The classification and treatment of Classified Allowed Claims and Interests against the Debtor pursuant to the Plan, is as follows:

| Class | Claim | Status | Voting Rights | Estimated Claims in Class | Anticipated Distribution Percentage |
|---|---|---|---|---|---|
| 1 | Priority (Non-Tax) Claims | Unimpaired | Conclusively Presumed to have Voted to Accept | $0.00 | 100% |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote | $150,000.00 | Unknown[2] |

[2] As described herein, the Debtor does not currently have any funds with which to make distributions to creditors in Class 2. All distributions will be based upon recoveries of claims of the Debtor (and the Cayman Entities) against third parties, the viability of which the Debtor and the JOLs are currently investigating.

| Class | Claim | Status | Voting Rights | Estimated Claims in Class | Anticipated Distribution Percentage |
|---|---|---|---|---|---|
| 3 | Limited Partnership Claims | Impaired | Entitled to Vote | $440,272,404.80 | Unknown[3] |
| 4 | Novus Partnership Interests[4] | Impaired | Entitled to Vote | N/A | Unknown |

3. Classification and Treatment of Claims

Class 1 – Other Priority (Non-Tax) Claims

(i) Classification: Class 1 consists of all Other Priority Claims against the Debtor which are not tax claims.

(ii) Treatment: The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered. Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Litigation Trustee, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

(iii) Voting: Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

Class 2 – General Unsecured Claims

(i) Classification: Class 2 Claims consists of all General Unsecured Claims held against the Debtor.

(ii) Treatment: Holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and

[3] As described herein, the Debtor does not currently have any funds with which to make distributions to creditors in Class 3. All distributions will be based upon recoveries of claims of the Debtor (and the Cayman Entities) against third parties, the viability of which the Debtor and the JOLs are currently investigating.

[4] Pursuant to the Subordination Letter, Novus agreed that the Novus Partnership Interests are subordinate to the Limited Partnership Claims in Class 3.

in exchange for each Allowed General Unsecured Claim, their Pro Rata share of the Class A Litigation Trust Units.

(iii) Voting: Class 2 is Impaired, and therefore Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

Class 3 - Limited Partnership Claims

(i) Classification: Class 3 consists of the Debtor's Limited Partnership Claims.

(ii) Treatment: Holders of Limited Partnership Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed Limited Partnership Claim, their Pro Rata share of Class B Litigation Trust Units, calculated based upon such Holder's Capital Account.

(iii) Voting: Class 3 is Impaired, and therefore Holders of Class 3 Limited Partnership Claims are entitled to vote to accept or reject the Plan.

Class 4 – Novus Partnership Interests

(i) Classification: Class 4 consists of the Novus Partnership Interests.

(ii) Treatment: To the extent that any Distributable Funds are available after full payment of all statutory fees, Administrative Claims, Priority Tax Claims, and Claims in Classes 1, 2, and 3, the Holders of Class 4 Interests shall receive such remaining funds in accordance with the Limited Partnership Agreement.

(iii) Voting: Class 4 is Impaired, and the Holders of Class 4 Interests are entitled to vote to accept or reject the Plan.

4. Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, nothing in the Plan shall affect the Debtor's or the Litigation Trust's rights with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

C. ACCEPTANCE OR REJECTION OF THE PLAN

1. Presumed Acceptance of Plan

Class 1 is Unimpaired under the Plan and, therefore, is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f)

2. Voting Classes

Classes 2, 3, and 4 are Impaired under the Plan, and Holders of Class 2 and 3 Claims and Class 4 Interests as of the Record Date shall be entitled to vote to accept or reject the Plan.

3. Acceptance by Impaired Classes of Claims

Pursuant to Bankruptcy Code § 1126(c), and except as otherwise provided in Bankruptcy Code § 1126(e), an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D. MEANS FOR IMPLEMENTATION OF THE PLAN

1. Source of Funds

The payments due under the Plan will be paid from: (i) first, the Exit Facility, and (ii) second, the liquidation of the Litigation Trust Assets.

2. Establishment of Litigation Trust

(a) Appointment of Litigation Trustee

The Confirmation Order shall provide for the appointment of the Litigation Trustee. The Litigation Trustee shall be deemed the Litigation Trust's exclusive representative in accordance with Bankruptcy Code § 1123 and shall have all powers, authority and responsibilities specified under Bankruptcy Code §§ 704 and 1106.

(b) Bond

The Litigation Trustee shall serve without a bond. The Litigation Trustee may, at its option, obtain a bond, provided that there is sufficient Cash available in the Litigation Trust to purchase a bond.

(c) Litigation Trust Oversight Committee

The Confirmation Order shall provide for the appointment of the Litigation Trust Oversight Committee, which shall initially consist of the members identified in the Plan Supplement. The

Litigation Trust Oversight Committee shall have the authority specified in, and act pursuant to, the Plan and Litigation Trust Agreement.

(d) Governance

The Litigation Trustee's rights and obligations shall be governed by the Plan and the Litigation Trust Agreement. To the extent of any ambiguity between the Plan and the Litigation Trust Agreement, the Litigation Trust Agreement shall be deemed to control.

(e) Funding of the Litigation Trust Expenses

The Litigation Trust Expenses shall be funded by the Exit Facility, the proceeds of the liquidation of the Assets, and/or the proceeds of any additional financing agreements entered into by the Litigation Trust after the Effective Date, and shall be paid prior to distributions with respect to Claims.

(f) Funding of Litigation Trust

The Litigation Trust shall be funded by the Litigation Trust Assets.

(g) Transfer of Estate's Assets to Litigation Trust

On the Effective Date, the Debtor shall transfer to the Litigation Trust all of its rights, titles, and interests in and to the Litigation Trust Assets, including, without limitation, all Avoidance Actions and Causes of Action. For avoidance of doubt, the Causes of Action shall be deemed to have been automatically assigned and transferred to the Litigation Trust on the Effective Date without the need for further conveyance or assignment document. Upon the Effective Date, the Litigation Trust shall be deemed to be substituted for, without further order of any court, the plaintiff in all Causes of Action. Any recoveries on account of the Causes of Action transferred to the Litigation Trust shall be distributed in accordance with the Plan.

(h) Purpose of the Litigation Trust

The Litigation Trust shall be established for the sole purpose of liquidating the Litigation Trust Assets and distributing the proceeds thereof in accordance with Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business.

(i) Federal Income Tax Treatment of the Litigation Trust

The Litigation Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a grantor trust, i.e., a passthrough entity. All parties must treat the transfer of the Litigation Trust Assets to the Litigation Trust as a transfer of such assets directly to the Litigation Trust beneficiaries, followed by the transfer of such assets by the beneficiaries to the Litigation Trust. Consistent therewith, all parties must treat the Litigation Trust as a grantor

trust of which the Litigation Trust beneficiaries are the owners and grantors. The Litigation Trust beneficiaries (and any subsequent holders of interests in the Litigation Trust) generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Litigation Trust Assets. The Litigation Trustee shall determine the fair market value of the Litigation Trust Assets in the manner set forth in the Litigation Trust Agreement, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

(j) Dissolution of Litigation Trust and Discharge of Litigation Trustee

The Litigation Trust shall be dissolved and the Litigation Trustee shall be discharged of his duties hereunder in accordance with the terms of the Litigation Trust Agreement.

(k) Indemnification

Neither the Litigation Trustee, nor the Litigation Trust Oversight Committee, nor their respective designees, employees or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee, shall be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Litigation Trustee and the Litigation Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Litigation Trustee and the Litigation Trust Oversight Committee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Litigation Trust shall indemnify and hold harmless the Litigation Trustee, the Litigation Trust Oversight Committee, and each of their designees and professionals, all duly designated agents and representatives thereof (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

3. Powers and Obligations of the Litigation Trustee

On the Effective Date, the Litigation Trustee shall succeed to all of the rights of the Estate with respect to the Assets necessary to protect, conserve, and liquidate all Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Assets that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law. The powers and duties of the Litigation Trustee shall include, with the consent of the Litigation Trust

Oversight Committee to the extent set forth in the Litigation Trust Agreement and without further order of the Court except where expressly stated otherwise, the rights

(i) to invest Cash in accordance with Bankruptcy Code § 345, and withdraw and make distributions of Cash to Holders of Claims and pay taxes and other obligations incurred by the Estate in accordance with the Plan;

(ii) to receive, manage, invest, supervise, and protect the Litigation Trust Assets, including paying taxes or other obligations incurred in connection with administering the Litigation Trust Assets;

(iii) to enter into financing agreements or arrangements with third parties, including Holders of Limited Partnership Claims, as may be required to fund the Litigation Trust Expenses;

(iv) to engage attorneys, consultants, agents, employees and all professional persons, to assist the Litigation Trust with respect to the Litigation Trust's responsibilities;

(v) to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Litigation Trust and to pay all other expenses in connection with administering the Litigation Trust Assets;

(vi) to execute and deliver all documents, and take all actions, necessary to consummate the Plan and the responsibilities of the Litigation Trust;

(vii) to dispose of, and deliver title to others of, or otherwise realize the value of, Assets to the extent that such action creates value for the Litigation Trust;

(viii) subject to Article VIII of the Plan, to object to Claims against the Debtor;

(ix) subject to Article X of the Plan, to compromise and settle Claims by and against the Debtor;

(x) enter into such agreements as may be advisable to satisfy the Litigation Trustee's duties pursuant to the Plan, including entering into an appropriate pooling or sharing arrangement with the Cayman Entities (or their joint liquidators) concerning the proceeds of Causes of Action, re-financing the Exit Facility, or entering into new financing agreement or arrangements to continue funding Litigation Trust Expenses;

(xi) to act on behalf of the Litigation Trust in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions and Causes of Action) assigned to the Litigation Trust, then pending or that can be commenced in the Bankruptcy Court and in all actions and

proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan. The Litigation Trustee shall be authorized to enter into settlements of Causes of Action without a hearing or Court approval;

(xii) abandon any Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets and shall be treated pursuant to the prevailing law of the relevant jurisdiction.

4. <u>Dissolution of the Debtor</u>

Upon the Effective Date, the Debtor shall be deemed dissolved for all purposes. No other actions, filings, or payments shall be required in furtherance of such dissolution.

E. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>

On the Effective Date, and solely with regard to any such executory contracts or unexpired leases entered into by the Debtor, all Executory Contracts and Unexpired Leases shall be deemed automatically rejected in accordance with the provisions of Bankruptcy Code §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory or Unexpired Lease:

(a) has previously been assumed by the Debtor by Final Order of the Bankruptcy Court;

(b) has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

(c) is the subject of a motion to assume or reject pending as of the Effective Date; or

(d) is otherwise assumed pursuant to the terms herein.

2. <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>

Notwithstanding anything to the contrary provided herein, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) thirty (30) days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is thirty (30) days following the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, its Estate and the Litigation Trust, unless otherwise ordered by the Bankruptcy Court or as otherwise

provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E of the Plan.

Notwithstanding anything herein to the contrary, nothing in the Plan is intended to extend the deadline by which Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases was required to be previously Filed.

3. Modifications, Amendments, Restatements or Other Agreements

Unless otherwise provided by the Plan, each rejected Executory Contract or Unexpired Lease shall include all modifications, amendments, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtor during the pendency of the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

4. Reservation of Rights

**Nothing contained in the Plan or the exhibits to the Plan shall constitute an admission by the Litigation Trustee, the Debtor, or the Litigation Trust that any such contract or lease in an Executory Contract or Unexpired Lease or that the Litigation Trustee, the Debtor or the Litigation Trust has any liability thereunder. Additionally, the Litigation Trustee, Debtor and Litigation Trust reserve all of their defenses and rights with respect to any rejection damages claims filed by an Entity with respect to an Executory Contract or Unexpired Lease.**

F. PROVISIONS FOR GOVERNING DISTRIBUTION

1. Distributions for Allowed Claims

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a disputed claims reserve (the "Disputed Claims Reserve"), all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Litigation Trustee, or his counsel, as set forth in the Plan. The Litigation Trustee, as applicable, shall make distributions on the Effective Date or as soon as reasonably practicable thereafter, to Holder of Allowed Administrative Claims, Fees of the type described in 28 U.S.C. § 1930(a)(6), including the fees of the United States Trustee, and any applicable interest, and Allowed Fee Claims.

The Litigation Trustee or the Litigation Trust shall make further distributions to Holders of Claims that subsequently become Allowed Claims pursuant to the Plan. Nothing in this Plan shall be deemed to make any Claim or Interest Allowed, and the Debtor and the Litigation Trust

reserve all rights to object to any Claim or Interest, including Class 4 Novus Partnership Interests, on any applicable grounds.

2. Distributions on Account of Claims Allowed After the Effective Date

(a) Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Debtor or the Litigation Trustee, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the first Business Day which is twenty (20) calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan. In the event Claims require adjudication or other resolution, the Debtor and Litigation Trustee reserve the right to, or shall upon the order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

(b) Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3. Delivery and Distributions and Undeliverable or Unclaimed Distributions

(a) Delivery of Distributions in General

Except as otherwise provided herein, the Litigation Trustee, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Litigation Trustee, as applicable. Nothing herein shall require or be deemed to require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim. Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

(b) Minimum Distributions

Notwithstanding anything in the Plan to the contrary, the Litigation Trustee shall not be required to make distributions of less than $250.00, and shall not be required to make partial distributions or payments of fractions of dollars. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $250.00 shall forfeit, at the option of the Litigation Trustee, such amount to, and such amount shall vest in the Litigation Trust for distribution in accordance with the terms of this Plan.

In the event that all Allowed Claims, including Administrative Claims, General Unsecured Claims, and Limited Partnership Claims have been paid in full, all undeliverable distributions or unclaimed property shall be distributed to Holders of allowed Class 4 Novus Partnership Interests.

(c) Undeliverable Distributions and Unclaimed Property

If any distribution is returned as undeliverable, the Litigation Trustee may, in his reasonable discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Litigation Trust has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Litigation Trustee shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Litigation Trustee shall be returned to, and held by the Litigation Trustee, until the distributions are claimed, or are to be deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Litigation Trustee to make additional distributions in accordance with the provisions of the Plan. After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full, with interest, any Unclaimed Property shall revert to the Litigation Trust.

4. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Litigation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including segregating or reserving a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding or other taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Litigation Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

5. Timing and Calculation of Amounts To Be Distributed

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the Date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If

and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6. Setoffs

The Litigation Trustee may withhold (but not set off except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Litigation Trust may hold against the Holder of any such Allowed Claim, except Holders of Class 3 Limited Partnership Claims. Except as set forth in this section or as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's or the Litigation Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment, and all rights of Holders of Claims or Interests to contest any setoff or recoupment are reserved. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation Trustee of any such claims, equity interests, rights and Causes of Action that the Litigation Trust may possess against any such Holder, except as specifically provided herein.

## G. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS

1. Resolution of Disputed Claims

(a) Resolution of Disputed Claims

The Litigation Trustee, as applicable, shall have the authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims filed by such party. From and after the Effective Date, the Litigation Trustee may settle, compromise, or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party. Notwithstanding the foregoing, any settlement of a Claim against the Debtor which is non-dischargeable pursuant to Bankruptcy Code § 523 shall not be binding upon the Litigation Trust unless such settlement is approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

(b) Procedure for Omnibus Objections to Claims

The Litigation Trustee is permitted to file omnibus objections to Claims (an "Omnibus Objection") on any grounds, including, but not limited to, those grounds specified in Bankruptcy Rule 3007(d). For Claims that have been transferred, a notice shall be provided only to the claimant listed as being the owner of such Claim on the Debtor's claims register as of the date the Omnibus Objection is filed. The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all Claims subject to the objection thereby; rather, the notice shall (i) identify the particular Claim or Claims filed by the claimant that are the subject of the

Omnibus Objection, (ii) provide a unique, specified, and detailed basis for the objection, (iii) explain the proposed treatment of the Claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

(c) Claims Estimation

The Litigation Trust and/or the Litigation Trustee may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including Bankruptcy Code § 502(c), regardless of whether the Litigation Trust or the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Litigation Trust may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding Bankruptcy Code § 502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Bankruptcy Code § 502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty (20) days after the date on which such Claim is estimated. Each of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(d) Deadline to File Objections to Claims

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

2. Claims Allowance

Except as expressly provided herein or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Litigation

Trustee and the Estate will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date.

3. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

4. Disallowance of Claims

All Claims of any Entity from which property is sought by the Litigation Trustee under Bankruptcy Code §§ 542, 543, 550 or 553, or that the Litigation Trustee alleges is a transferee of a transfer that is avoidable under Bankruptcy Code §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Entity or transferee has failed to turnover such property.

EXCEPT AS OTHERWISE AGREED TO BY THE LITIGATION TRUSTEE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

H. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

1. Conditions Precedent to Confirmation

It shall be conditions precedent to Confirmation of the Plan that:

(a) all provisions, terms, and conditions of the Plan are approved in the Confirmation Order; and

(b) the proposed Confirmation Order shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; and (iv) approve the Litigation Trust Agreement.

2. Conditions Precedent to Consummation and Occurrence of Effective Date

It shall be a condition to Consummation of the Plan and occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

(a) the Confirmation Order shall have been entered and become a Final Order in form and substance satisfactory to the Litigation Trustee and the Creditors' Committee;

(b) all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been executed;

(c) all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties; and

(d) the Exit Facility shall have been entered in form and substance satisfactory to the Litigation Trustee and the Creditors' Committee.

3. Waiver of Conditions

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor and/or the Litigation Trustee, with the written consent of the the Creditors' Committee, without notice, leave or order of the Bankruptcy Court or any formal action other than by proceeding to confirm or consummate the Plan.

4. Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders or any other Entity in any respect.

I. SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS

1. Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Bankruptcy Code §§ 510(b) and 510(c) or otherwise. As of the Effective Date, any and all such rights described in the

preceding sentence are settled, compromised and released pursuant hereto. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Estate, the Debtor, and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019.

In accordance with the provisions of this Plan, and pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Litigation Trustee may, with the consent of the Litigation Trust Oversight Committee to the extent set forth in the Litigation Trust Agreement, compromise and settle Claims against the Debtor, and (2) the Litigation Trustee may, with the consent of the Litigation Trust Oversight Committee to the extent set forth in the Litigation Trust Agreement, compromise and settle Causes of Action against other Entities.

2. Exculpation

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE § 1125(E), THE DEBTOR'S COUNSEL, THE DEBTOR'S CHIEF RESTRUCTURING OFFICER, THE CREDITORS' COMMITTEE, AND ANY RETAINED PROFESSIONALS OF THE AFOREMENTIONED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR'S ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR, THE DEBTOR'S COUNSEL, AND THE DEBTOR'S CHIEF RESTRUCTURING OFFICER SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S

PROPERTY, THE DEBTOR'S COUNSEL, THE DEBTOR'S CHIEF RESTRUCTURING OFFICER, THE CREDITORS' COMMITTEE, AND ANY RETAINED PROFESSIONALS OF THE AFOREMENTIONED PARTIES' ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS ( OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY IN ADDITION, THE INJUNCTION PROVIDED FOR THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

3. <u>Preservation of Rights of Action / Reservation of Rights</u>

(a) <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, including the exculpation provisions thereof, after the Effective Date, the Litigation Trust shall retain all rights to and shall have standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter, arising in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Case. A non-exhaustive schedule of such retained Causes of Action shall be included in the Plan Supplement.

The Litigation Trustee, pursuant to the requirements of the Litigation Trust Agreement, may elect not to pursue any Causes of Action that the Debtor otherwise has authority to pursue hereunder, the pursuit of which the Litigation Trustee deems not to be in the best interest of the Litigation Trust.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor or its Estate had immediately prior to the Petition Date, against or with respect to any Claim whether impaired or left unimpaired by the Plan. Except as specifically provided for in the Plan or Confirmation Order, including the exculpation provisions thereof, the Litigation Trust shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim whether impaired or left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, any claims, rights, or Causes of Action that the Debtor may hold against any Entity shall vest in the Litigation Trust on the Effective Date and the Litigation Trustee shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action, and, subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall not require the consent or approval or any party or

any further order of the Bankruptcy Court to settle or resolve any claims, rights and Causes of Action.

(b) Preservation of All Causes of Action Not Expressly Sold, Settled, or Released

Unless a claim or Cause of Action against a Holder of a Claim or other Entity is expressly waived, abandoned, relinquished, released, compromised, assigned, or settled in the Plan or any Final Order (including the Confirmation Order), including the exculpation provisions thereof, the Debtor expressly reserves such claim or Cause of Action for later action by the Litigation Trust (including claims and Causes of Action of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan, or any other Final Order (including the Confirmation Order), including the exculpation provisions thereof. In addition, the Debtor and the Litigation Trustee, as the case may be, reserves the right to pursue to adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant, or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuit except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

For the avoidance of doubt, nothing in the Plan shall be deemed to release Causes of Action against any party, including, but not limited to, Holders of Class 4 Novus Partnership Interests.

4. Preservation of Insurance

Nothing in the Plan shall diminish or impair the enforceability of policies of insurance that may cover claims or Causes of Action against the Debtor, the Litigation Trustee, any other Entity, or any other Person.

5. Injunction

PURSUANT TO BANKRUPTCY CODE § 1141(d)(3)(A), THE DEBTOR SHALL NOT BE DISCHARGED PURSUANT TO THE PLAN. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES AGAINST THE DEBTOR'S ESTATE, SOLELY IN SUCH CAPACITY, INCLUDING BUT NOT LIMITED TO ANY AND ALL PROPERTY OF THE DEBTOR AND ITS ESTATE, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION UNDER THIS PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (B) ENFORCING,

ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE § 553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE ESTATE'S ASSETS, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

## J. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for the payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to adjudicate and, if necessary, to liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5. resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Case;

6. resolve issues that may arise as between the Litigation Trust, the Oversight Committee, and the Cayman Entities, including with respect to any agreements entered into between the Litigation Trust and the Cayman Entities;

7. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

8. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future by or against the Litigation Trust, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Litigation Trustee after the Effective Date; provided that the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

9. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

10. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

12. enforce the exculpations and injunctions contained in this Plan;

13. resolve any cases, controversies, suits or dispute with respect to any injunction, exculpation or other provisions contained in the Plan, and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

14. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Litigation Trust Agreement, or any contract, instrument, release or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

16. enter an order closing the Chapter 11 Case.

K. MISCELLANEOUS PROVISIONS

1. Payment of Statutory Fees

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan. All such fees that arise after the Effective Date shall be paid by the Litigation Trustee from Cash. The obligation of the Litigation Trust to pay quarterly fees, and interest, if any, for delinquent fees pursuant to section 3717 of Title 31 of the United States Code, to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Chapter 11 Case is closed.

2. Quarterly Reports

The Litigation Trustee shall file quarterly reports of his disbursements after the Confirmation Date and provide copies to the U.S. Trustee.

3. Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Litigation Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code § 1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

4. Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of

Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court, and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Debtor, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, or any other Entity.

5. Successor and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall insure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

6. Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order. Neither the filing of the Plan, any statement or provisions contained herein, nor the taking of any action by the Debtor, or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or Entity prior to the Effective Date.

7. Further Assurances

The Debtor or the Litigation Trust or the Litigation Trustee, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

8. Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that the Debtor may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and the provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9. Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

a. If to the Debtor:

Rimon P.C.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attention: Ronald Friedman, Esq.
Brian Powers, Esq.

b. If to the Litigation Trustee, at the address indicated in the Litigation Trust Agreement.

c. If to a Holder of a Claim or Interest, at the address set forth in its Proof of Claim or proof of Interest filed with and Allowed by the Bankruptcy Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

d. If to the Official Committee of Unsecured Creditors:

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
Attn: Gianfranco Finizio, Esq.

e. If to the United States Trustee for Region 2:

Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York, 10004-1408
Attention: Mark Bruh, Esq.

## IV. SOLICITATION AND VOTING PROCEDURES

### A. RECORD DATE

The Record Date is __________, 2026, the date on which the Bankruptcy Court entered the Disclosure Statement Approval Order. The Record Date is the date on which the following will be determined: (a) which Holders of Claims and Interests are entitled to vote to accept or reject the Plan and receive the Solicitation Package; and (b) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim.

B. VOTING DEADLINE

The Voting Deadline is __________, 2026 at 4:00 p.m. To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by using the return envelope provided by: (a) first class mail; (b) overnight courier; or (c) personal delivery, so that they are actually received no later than the Voting Deadline by the Voting Agent. The Ballots will clearly indicate the appropriate return address. Ballots returnable to the Voting Agent should be sent to: Rimon P.C., 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald Friedman.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM OR INTEREST, BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL BE COUNTED AS AN ACCEPTANCE OF THE PLAN.

BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTORS THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN.

IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT, AS APPROPRIATE, WHEN SUBMITTING A VOTE.

C. SOLICITATION PROCEDURES

1. Solicitation Package

The following documents and materials will constitute the Solicitation Package:

(a) the Disclosure Statement Approval Order;

(b) an appropriate form of Ballot and instructions with respect thereto, if applicable;

(c) the approved form of the Disclosure Statement (together with the Plan, which is Exhibit A thereto);

(d) a cover letter from the Creditors' Committee addressed to holders of General Unsecured Claims and Limited Partner Claims; and

(e) such other materials as the Bankruptcy Court may direct.

2. Distribution of the Solicitation Package

The Solicitation Package will be distributed to Holders of Claims and Interests in the Voting Classes as of the Record Date.

D. VOTING AND TABULATION PROCEDURES

1. Ballot Tabulation

The following voting procedures and standard assumptions will be used in tabulating the ballots:

(a) a Claim will be deemed temporarily counted for voting purposes in an amount equal to (i) if a timely filed Proof of Claim has not been filed, the undisputed amount of such Claim as set forth in the Schedules filed by the Debtor, or (ii) the amount of such Claim as set forth in a timely filed Proof of Claim;

(b) if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

(c) if a Claim is listed in the Schedules as contingent, unliquidated or disputed, such Claim will be disallowed for voting purposes

(d) if the Debtor has filed and served an objection to a Claim at least ten (10) days before the Voting Deadline, such claim will be temporarily disallowed for voting purposes in accordance with the relief sought in the objection; and

(e) if a Holder of a Claim or Interest identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be temporarily counted for voting purposes in the lesser amount identified on such ballot.

## V. CONFIRMATION PROCEDURES

A. CONFIRMATION HEARING

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code. Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of the plan.

1. Confirmation Hearing Date

The Confirmation Hearing will be held on ____________ at 11:00 a.m. (prevailing E.S.T.), before the Honorable Kyu Young Paek, United States Bankruptcy Judge, in the Bankruptcy Court. The Confirmation Hearing may be continued without further notice other than an adjournment announced in open court at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. The Plan may be modified if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

2. Plan Objection Deadline

The Plan Objection Deadline (the "Objection Deadline") is __________, 2026 at 4:00 p.m. All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtors, and certain other parties in accordance with the Disclosure Statement Approval Order, as approved, on or before the Objection Deadline. Objections to the Plan or requests for modifications to the Plan, if any, must:

- be in writing;
- conform to the Bankruptcy Rules and the Local Bankruptcy Rules;
- state the name and address of the objecting Entity and the amount and nature of the Claim or Interest of such Entity;
- state with particularity the basis and nature of the objection and, if practicable, a proposed modification to the Plan that would resolve the objection; and
- be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is actually received by the Debtors, and other parties identified in the Disclosure Statement Approval Order on or prior to the Objection Deadline.

The proposed schedule will provide Entities with sufficient notice of the Objection Deadline, which will be at least 28 days, as required by Bankruptcy Rule 2002(b), plus three (3) days for service by first class mail, as required by the Bankruptcy Rule 9006(f). The Debtor believes that the Objection Deadline will afford the Bankruptcy Court, the Debtors, and other parties in interest reasonable time to consider any objection to confirmation of the Plan prior to the Confirmation Hearing.

THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO THE PLAN UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT APPROVAL ORDER.

3. Objections must be served on all of the following parties:

If to the Debtor:

Rimon P.C.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attention: Ronald Friedman, Esq.
Brian Powers, Esq.

If to the Official Committee of Unsecured Creditors:

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
Attention: Jeffrey Cohen, Esq.
Gianfranco Finizio, Esq.

If to the United States Trustee for Region 2:

Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York, 10004-1408
Attention: Mark Bruh, Esq.

## B. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Disclosure Statement satisfies Bankruptcy Code § 1125 and whether the Plan satisfies the requirements of Bankruptcy Code § 1129. The Debtor believes that: (1) the Disclosure Statement and the Plan satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) the Debtors have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith. Specifically, in addition to others, as applicable, the Debtors believe that the Plan satisfies or will satisfy the applicable Confirmation requirements of Bankruptcy Code § 1129 as set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.
- The Debtor, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.
- The Plan has been proposed in good faith and not by any means forbidden by law.
- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the cases, has been disclosed to the Bankruptcy Court, and any such payment: (1) made

before the Confirmation of the Plan is reasonable; or (2) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after the Confirmation of the Plan.

- Either each Holder of an Impaired Claim or Interest will have accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan will have either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such Class pursuant to Bankruptcy Code § 1129(b).

- Except to the extent that the Holder of a particular Claim or Interest will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

1. Best Interests of Creditors Test / Liquidation Analysis

Pursuant to Bankruptcy Code § 1129(a)(7), for a plan to be confirmed, it must provide that holders of claims or equity interests will receive at least as much under a plan as they would receive in a liquidation of the debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired class requires that each holder of an allowed claim or equity interest of such class either: (i) accepts the plan; or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class or Interests equals or exceeds the value that would be allocated to such Holders if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.

The Plan provides for the liquidation of the Assets for the payment of Allowed Claims and Interests. Accordingly, the Debtor believes that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such Holder in a chapter 7 bankruptcy proceeding or proceedings. Generally, to determine what Holders of Allowed Claims and Interests in each impaired Class would receive if the Debtor's estate was liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtor's assets and properties in the context of a chapter 7 liquidation case for the Debtor, which for unsecured creditors would consist of the proceeds resulting from the disposition of the assets of the Debtor, augmented by the unencumbered Cash held by Debtor at the time of the

commencement of the liquidation case. Such Cash amounts would be reduced by the costs and expenses of the liquidation and the use of chapter 7 for the purpose of liquidation.

The chapter 7 liquidation of the Debtor would also likely result in delay in the payment to creditors. Among other things, pursuant to Bankruptcy Rule 3002(c), chapter 7 cases could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter 11 Case to chapter 7. Hence, chapter 7 liquidation would not only delay distribution, but would also raise the prospect of additional claims that were not asserted in the Chapter 11 Case.

2. Feasibility

Bankruptcy Code § 1129(a)(11) requires the Bankruptcy Court to find, as a condition of confirmation, that confirmation is not likely to be followed by the debtor's liquidation or the need for further financial reorganization, unless that liquidation or reorganization is contemplated by the Plan. The Plan contemplates that the proceeds from the Liquidation of the Assets will be distributed to the creditors of the Debtor pursuant to the terms of the Plan. The Debtor believes that the Plan meets the financial feasibility requirement. The Debtor believes that, subject to the risk factors described below, sufficient funds will exist to make all payments required by the Plan.

3. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Bankruptcy Code § 1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired equity interests to accept a plan, Bankruptcy Code § 1126(d) requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan. Thus, a class of equity interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

Claims in Class 1 are Unimpaired under the Plan, and, as a result, the Holders of such Claims are deemed to have accepted the Plan and their votes will not be solicited.

Claims and Interests in Classes 2, 3, and 4 are Impaired under the Plan. Those Classes will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims and Interests of the Class (other than any Claims of Creditors designated under Bankruptcy Code § 1126(e)) that have voted to accept or reject the Plan.

## C. RISK FACTORS

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim or Interest should consider carefully all of the information in this Disclosure Statement and should particularly consider the Risk Factors described in Article VI, "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan."

## D. CONTACT FOR MORE INFORMATION

Any interest party desiring further information about the Plan should contact the Debtor's counsel, Rimon P.C., 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald Friedman, Tel: (516) 479-6300.

# VI. PLAN RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF RISKS, INCLUDING THOSE ENUMERATED BELOW. PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE IMPAIRED AND ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT AND OTHER DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

## A. GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS

### 1. Parties in Interest May Object to the Classification of Claims and Interests

Bankruptcy Code § 1122 provides that a plan may place a claim or an equity interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created certain Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2. Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek to accomplish an alternative chapter 11 plan. Additionally, it is possible that other parties in interest will have the right to propose an alternative plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

3. The Debtors May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed

Bankruptcy Code § 1129 sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtor's estate were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the solicitation procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the solicitation procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.

The Confirmation and Consummation of the Plan also are subject to certain other conditions. No assurance can be given that these conditions will be satisfied.

4. Litigation Trustee May Object to the Amount of Classification Claim

Except as otherwise provided in the Plan, the Litigation Trustee reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim or Interest where such Claim or Interest is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

5. Risk of Non-Occurrence of the Effective Date

Although the Debtor believes that the Effective Date will occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

6. Risks Affecting Potential Recoveries

Due to the nature of the Assets, the Debtor cannot state with full certainty what recovery will be available to Holders of Claims or Interests as recoveries on any Causes of Action are speculative. In addition, the Debtor cannot know with certainty, at this time, the number or size of Claims in Classes 2 and 3 that will ultimately be Allowed.

## B. RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor, and its professionals, relied on financial data derived from documents obtained from Novus and certain third parties that had been obtained at the time of such preparation. Although the Debtor, and its professionals, have used their reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor, and its professionals, believe that such financial information fairly reflects the financial condition of the Debtor, and its professionals, are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## C. DISCLOSURE STATEMENT DISCLAIMER

1. Information Contained Herein Is For Soliciting Votes

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

2. This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission

This Disclosure Statement was not filed with the Commission under the Securities Act or applicable state securities laws. Neither the Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits to the statements contained herein, and any representation to the contrary is unlawful.

3. This Disclosure Statement May Contain Forward Looking Statements

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be

predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

4. No Legal or Tax Advice is Provided to You by This Disclosure Statement

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

5. No Admissions Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interest or any other parties in interest.

6. Failure to Identify Litigation Claims or Projected Objections

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO CLAIM IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT. MOREOVER, THE LITIGATION TRUSTEE, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE LITIGATION CLAIMS AND PROJECTED OBJECTIONS TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

7. No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Litigation Trustee to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

8. Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtor as of the date of the Plan, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this

Disclosure Statement. Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Plan Proponent has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

D. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

As set forth above, if the Plan is not confirmed, the Debtor's Chapter 11 Case could be converted to liquidation cases under chapter 7 of the Bankruptcy Code. Alternatively, other parties in interest may seek confirmation of an alternative plan of reorganization under chapter 11 of the Bankruptcy Code. In chapter 7, a trustee would be appointed to promptly liquidate the assets of the Debtor.

The Debtor believes that in a liquidation under chapter 7, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee, along with an increase in expenses associated with an increase in the number of unsecured claims that would be expected, would cause a substantial diminution in the value of the Estate. Such a chapter 7 trustee and his professionals would be required to become familiar with the financial affairs of the Debtor and the Cayman Entities, and ultimately coordinate with the CRO in his role as a JOL in order to prosecute Causes of Action, leading to substantial and unnecessary cost increases.

The assets available for distribution to creditors and equity holders would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation. A more thorough discussion of the effects that chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth above in Article V.

## VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

THE DEBTOR AND ITS PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTOR, HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE, AND LOCAL TAX CONSEQUENCES.

## VIII. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because it provides the greatest distributions and opportunity for distributions to Holders of Claims and Interests against the Estate. In addition, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses.

Accordingly, the Debtor urge all Holders of Claims and Interests entitled to vote on the Plan to vote to accept the Plan and to indicate such acceptance by returning their Ballots so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on ____________, 2026.

Dated: As of August 3, 2026

**Mars FX US LP**

*s/ Luke Anthony Furler*
Luke Anthony Furler, Chief Restructuring Officer

Dated: As of August 3, 2026

**RIMON P.C.**
Counsel to Mars FX US LP

*s/ Brian Powers*
Brian Powers
Partner
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300