**Hearing Date: September 17, 2026**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MARS FX US LP, | Case No.: 26-22287 (KYP) |
| Debtor. | |

# DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF MARS FX US LP

**RIMON P.C.**
*Attorneys for Mars FX US LP*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

Mars FX US LP (the "Debtor"), respectfully submits this memorandum of law in support of the *First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Mars FX US LP*, dated August 3, 2026 (ECF Doc. No. 65) (the "Plan"),[1] pursuant to section 1129 of title 11, United States Code (the "Bankruptcy Code"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

The Plan has been overwhelmingly approved by each Class of Claims and Interests, and is the product of extensive negotiations between the Debtor and Committee to maximize distributions to the Debtor's creditors.

The Plan provides for the distribution of funds remaining in the Litigation Trust (as defined in the Plan) from the liquidation of the Debtor's assets after (i) repayment of the Exit Facility (as defined in the Plan), and (ii) payment of the Litigation Trust Expenses (as defined in the Plan). All distributions will be based upon the liquidation of the Litigation Trust Assets and any recoveries on any potential claims of the Debtor's estate. The Litigation Trust will make all distributions pursuant to the terms of the Plan.

## BACKGROUND

### Pre-Petition Background

The Debtor is a Delaware limited partnership. The Debtor's primary business was an "Onshore Feeder," which was the vehicle in the United States as part of a cross-border investment structure that was comprised of the Debtor and two (2) Cayman Islands entities, Mars FX Master Ltd and MARS FX INTERNATIONAL LTD. (the "Cayman Entities"). Notably, this structure was established to raise capital from U.S. investors through the Debtor, and non-U.S. investors through the Offshore Feeder, for foreign exchange trading. The Debtor owns 75.64% of the Master Fund

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

according to a shareholding register dated January 31, 2025. As further described in previous filings before this Court, the Debtor is operationally and commercially intertwined with the Cayman Entities, and as such, Novus Capital Partners LLC, the Debtor's general partner ("Novus"), acted as the investment manager of the Cayman Entities. Novus is controlled by members David Choi, Ashish Patel, Patrick Hofman, and Jae Choi, each with a 25 % membership interest.

Moreover, the Debtor and the Cayman Entities are joint claimants in ongoing proceedings brought against Tech RealFX Ltd ("TRFX") in the British Virgin Islands (BVIHC (COM) 2025/0283) seeking recovery of the Debtor's and the Cayman Entities' combined alleged platform position (the "Platform Balance" or the "BVI Proceedings").

The Cayman Liquidation Proceedings

On January 13, 2026, the Cayman Entities were placed into voluntary liquidations by special resolutions passed by the voting shareholders of each respective company, before the Grand Court of the Cayman Islands Financial Services Division (the "Cayman Grand Court") commenced pursuant to Section 124 of the Companies Act (2026 Revision) cause number FSD 46 of 2026 (JAJ) and cause number FSD 46 of 2026 (JAJ) (together, the "Cayman Liquidation Proceedings").

Subsequently, on March 6, 2026, the Grand Court of the Cayman Islands (the "Grand Court") ordered that the winding up of the Cayman Entities be continued under the supervision of the Grand Court, and that Luke Furler and Tan Kim Han (Joffrey), both formerly of Quantuma (Singapore) Pte Ltd and currently of Trident Capital Advisors, and Owen Walker of R&H Restructuring (Cayman) Ltd, be appointed as Joint Official Liquidators of the Cayman Entities (the "JOLs").

The Cayman Liquidation Proceedings remain pending in the Cayman Grand Court.

**Procedural History**

The Chapter 15 Bankruptcy Cases

On March 23, 2026, the Cayman Entities each filed voluntary petitions under Chapter 15 of the Bankruptcy Code (the "Chapter 15 Bankruptcy Cases") for recognition of a foreign proceeding (the "Chapter 15 Petitions") in this Bankruptcy Court (Case Nos. 26-22288 (KYP) and 26-22289 (KYP)).

In addition, on March 23, 2026, the Cayman Entities each filed the following motions of the JOLs as foreign representatives ("Foreign Representatives") for an order for recognition of foreign main proceeding and certain related relief pursuant to Bankruptcy Code sections 105(a), 1504, 1508, 1509, 1510, 1512, 1515, 1516, 1517, and 1520 and Bankruptcy Rules 2002 and 9007 (ECF Doc Nos. 3 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)) (the "Recognition Motions"). On April 27, 2026, the Bankruptcy Court entered the orders granting the Recognition Motions (ECF Doc Nos. 20 (Case No. 26-22288 (KYP) and (Case No. 26-22289 (KYP)).

The Chapter 15 Bankruptcy Cases remain pending before the Bankruptcy Court.

The Chapter 11 Case and Approval of the Disclosure Statement

On March 23, 2026, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

On July 6, 2026, the Debtor filed a motion seeking entry of an order, among other things, approving the adequacy of the *Disclosure Statement* (ECF Doc. No. 66) (the "Disclosure Statement") *for the First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Mars FX US LP* (ECF Doc. No. 65). By order dated August 10, 2026 (ECF Doc. No. 70) (the "Disclosure Statement Order"), the Court approved the Disclosure Statement and established

procedures for the solicitation and tabulation of votes on the Plan.

**Voting Status**

The deadline for Holders of Claim entitled to vote on the Plan to submit their Ballots was September 10, 2026, at 4:00 p.m. (Prevailing Eastern Time) (the "Voting Deadline"). The Confirmation Hearing is scheduled for September 17, 2026, at 10:00 a.m. To date, the Debtor has received no objections to confirmation of the Plan. In support hereof, the Debtor is filing the Declaration of Courtney M. Roman Esq., with respect to voting on the Plan (the "Voting Declaration").

As set forth in greater detail in the Voting Declaration, Creditors in Classes 2 and 3, and Interest Holders in Class 4, have each voted nearly unanimously to accept the Plan. Claims in Class 1 are unimpaired under the Plan and are conclusively deemed to have accepted the Plan.

**ARGUMENT**

This memorandum is divided into two (2) parts. In Part I, the Debtor presents its "case in chief" that the Plan should be confirmed because it satisfies the requirements of Bankruptcy Code § 1129. In Part II, the Debtor describes why certain discretionary Plan provisions should also be approved.

**I. The Plan Satisfies Each Requirement for Confirmation.**

To confirm the Plan, the Court must find that the Debtor has satisfied the provisions in Bankruptcy Code § 1129 by a preponderance of the evidence.[2] The Debtor respectfully submits

[2] *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016) ("Section 1129(a) of the Code establishes the requirements for confirmation of a chapter 11 plan of reorganization and a debtor must satisfy the provisions of section 1129 by a preponderance of the evidence."); *In re Breitburn Energy Partners LP*, 582 B.R. 321, 349 (Bankr. S.D.N.Y. 2018) ("The proponent of the confirmation of a plan must prove by a preponderance of the evidence that it satisfies the relevant requirements of 11 U.S.C. § 1129(a), and if the plan is not fully consensual, 11 U.S.C. § 1129(b)."); *In re Purdue Pharma L.P.*, 675 B.R. 632, 663 (Bankr. S.D.N.Y. 2025) (Debtors satisfied the provisions of Section 1129 of the Bankruptcy Code by a preponderance of the evidence); *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395, 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the plan, have the burden of proving the satisfaction of the elements of Sections 1129(a) and (b) of the

that the Plan complies with all relevant sections of the Bankruptcy Code, including Bankruptcy Code §§ 1122, 1123, 1125, 1126, and 1129, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. This memorandum addresses each requirement individually, as well as the permissive discretionary elements of the Plan, including release, exculpation, and injunction provisions.

### A. The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Bankruptcy Code § 1129(a)(1)).

Bankruptcy Code § 1129(a)(1) requires that a plan of reorganization comply with the applicable provisions of the Bankruptcy Code, including, principally, rules governing classification of claims and interests and the contents of a plan of reorganization.[3] Accordingly, determining whether the Plan complies with Bankruptcy Code § 1129(a)(1) requires applying Bankruptcy Code §§ 1122 and 1123. As explained below, the Plan complies with Bankruptcy Code §§ 1122 and 1123 in all respects.

#### i. The Plan satisfies the Classification Requirements of Bankruptcy Code § 1122.

The classification requirements of Bankruptcy Code § 1122 provide:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to

---

Bankruptcy Code by a preponderance of the evidence.").

[3] *See Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.),* 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting that Congress intended the phrase "'applicable provisions' in [section 1129(a)(1)] to mean provisions of Chapter 11 . . . such as section 1122 . . . ."); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (noting that "[t]he legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan") (citations omitted); *See also In re Purdue Pharma L.P.*, 675 B.R. at 663 ("[T]he Plan here complies with Section 1129(a)(1) of the Bankruptcy Code, which requires that a plan of reorganization comply with all applicable provisions of the Bankruptcy Code.").

> an amount that the court approves as reasonable and necessary for administrative convenience.

The Second Circuit has recognized that, under Bankruptcy Code § 1122, plan proponents have significant flexibility to place similar claims into different classes, provided there is a rational basis to do so.[4] Courts have identified grounds justifying separate classification, including: (a) where members of a class possess different legal rights;[5] and (b) where there are good business reasons for separate classification.[6]

First, the Plan separately classifies Claims in Class 1 to reflect the Priority (non-tax) Claims under Bankruptcy Code § 507(a). The Plan separately classifies the remaining General Unsecured Creditors in Class 2, limited partners claims in Class 3, and Novus interest holder claims in Class 4.

Each of the Claims or Interests in a particular Class under the Plan is substantially similar

---

[4] *See Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 483 (2d Cir. 1994) (finding that courts cannot prohibit separate classification of substantially similar claims); *Frito-Lay, Inc., v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 956-57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court-approved settlement); *In re Purdue Pharma L.P.*, 675 B.R. at 663 ("Plan proponents have significant flexibility under Section 1122(a) to place similar claims into different classes as long as there is a rational basis for doing so."); *Drexel*, 138 B.R. at 757 ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims. It does not require that similar classes be grouped together . . .") (citation omitted); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 241 (Bankr. S.D.N.Y. 2014) (a debtor may place two similarly situated claimants in different classes and thereby provide different treatment for each respective class if "there is a reasonable basis for disparate treatment"); *see also Matter of Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes);

[5] *See Drexel*, 138 B.R. at 715; *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 311 (Bankr. S.D.N.Y. 2016) ("Other aspects of the classification scheme reasonably recognize the different legal or factual nature of claims or interests."); *In re Charter Communications, Inc.*, 419 B.R. 221, 265–66 (Bankr. S.D.N.Y. 2009) ("[T]the Debtors have offered several legitimate justifications for the separate classification scheme—most persuasively, that the legal rights of each class are not identical… however, the different legal origins of the two classes of claims is one of several reasons for separate classification offered by the Debtors.")

[6] *See Aetna Cas. & Sur. Co. v. Clerk U.S. Bankr. Ct., New York, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) (finding that debtor must have a legitimate business reason supported by credible proof to justify separate classification of unsecured claims); *In re Aegerion Pharmaceuticals, Inc.*, 605 B.R. 22, 31 (Bankr. S.D.N.Y. 2019) ("[S]eparate classification of ongoing trade creditors and other unsecured creditors is supported by evidence (which the Court finds persuasive) that the Debtors had good business reasons for the separate classification.").

to the other Claims or Interests in such Class, and the classification structure is necessary to implement distributions under the Plan. In each instance of separate classification, the Plan classifies Claims and Interests based upon their different rights and attributes.

Specifically, the Plan places prepetition general unsecured creditors in their own class ahead of Claims by the Debtor's equity holders. Moreover, the Claims of the Debtor's Limited Partners are separately classified with a higher priority because it was agreed by the Holders of Novus Partnership Interests, prior to the Petition Date, that distributions to them would be subordinate to the Limited Partnership Claims classified in Class 3. Accordingly, valid business, factual and legal reasons exist for classifying separately the various Classes of Claims and Interests created under the Plan, establishing a legitimate basis for the classification scheme under the Plan that "does not offend one's sensibility of due process and fair play."[7] Accordingly, the Debtor submits that the Plan fully complies with and satisfies the requirements of Bankruptcy Code § 1122.

**ii. The Plan Satisfies the Seven Mandatory Plan Requirements of Bankruptcy Code §§ 1123(a)(1)-(a)(7).**

The Plan meets the seven mandatory requirements of Bankruptcy Code § 1123(a) because:

- as required by section 1123(a)(1), Articles II and III of the Plan designates classes of claims and interests;
- as required by section 1123(a)(2), Articles III and IV of the Plan identifies unimpaired classes of claims and interests;
- as required by section 1123(a)(3), Article IV of the Plan specifies treatment of impaired classes of claims and interests;
- as required by section 1123(a)(4), Article IV of the Plan provides the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular

[7] *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 246-7 (Bankr. S.D.N.Y. 2007) (the "*Adelphia Confirmation Decision*") (quoting *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 703 (Bankr. S.D.N.Y. 1993)); *In re Sabine Oil & Gas Corp*., 555 B.R. 180, 311 (Bankr. S.D.N.Y. 2016).

claim or interest;

- as required by section 1123(a)(5), Article V and various other provisions of the Plan provides adequate means for its implementation;

- as required by section 1123(a)(6), the Plan does not provide for the issuance of nonvoting equity securities, but rather provides for the dissolution of the Debtor and the creation of the Litigation Trust; and

- as required by section 1123(a)(7), the Plan is consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the Litigation Trustee.[8]

In light of the foregoing, the Debtor respectfully submits that the Plan satisfies Bankruptcy Code § 1123(a).

**B. The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code (Bankruptcy Code § 1129(a)(2)).**

The Debtor has satisfied Bankruptcy Code § 1129(a)(2), which requires that the proponent of a plan of liquidation complies with the applicable provisions of the Bankruptcy Code. The case law and legislative history to Bankruptcy Code § 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in Bankruptcy Code § 1125, and the plan acceptance requirements set forth in Bankruptcy Code § 1126.[9] The Debtor has complied with these provisions, including Bankruptcy Code §§ 1125 and 1126, as well as

[8] *See* 11 U.S.C. § 1123(a)(1)-(7).

[9] *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code.") (citations omitted); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 311 (Bankr. S.D.N.Y. 2016) ("The case law and legislative history to section 1129(a)(2) reflect that this provision is intended to encompass the disclosure and solicitation requirements set forth in section 1125 of the Code and the plan acceptance requirements set forth in section 1126 of the Code."); *In re 20 Bayard Views, LLC*, 445 B.R. 83, 95 (Bankr. E.D.N.Y. 2011) (to comply with section 1129(a)(2), Courts "require that the plan proponent comply with the disclosure and solicitation requirements set forth in Bankruptcy Code Sections 1125 and 1126"); *see also* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan pursuant to the Disclosure Statement Order.

**i. The Debtor Has Complied with the Disclosure and Solicitation Requirements of Bankruptcy Code § 1125.**

Bankruptcy Code § 1125 prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[10] The purpose of Bankruptcy Code § 1125 is to ensure that parties in interest are fully informed regarding the condition of the Debtor, the means for implementation of the Plan and related transactions, and the treatment of all classes of claims and interests, all so it may make an informed decision whether to approve or reject the plan.[11]

The Debtor has satisfied Bankruptcy Code § 1125. First, before the Debtor began soliciting votes on the Plan, the Court approved the Disclosure Statement as containing adequate information, and the procedures for soliciting and tabulating the votes on, and for objecting to, the Plan.[12] Second, the Court approved the content of the various solicitation materials that the Debtor provided to holders of Claims, as well as the timing and method of delivery of the solicitation materials. Finally, as detailed further in the Voting Declaration, the Debtor complied in all respects with the content and delivery requirements of the solicitation procedures as outlined in the Disclosure Statement Order. As a result, the Debtor respectfully submits that it has satisfied

[10] 11 U.S.C. § 1125(b).

[11] *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[12] *See* Disclosure Statement Order (ECF Doc. No. 70).

Bankruptcy Code § 1125.

**ii. The Debtor has complied with the Plan Acceptance Requirements of Bankruptcy Code § 1126.**

Bankruptcy Code § 1126 provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[13]

As set forth in the Plan, the Disclosure Statement, the Disclosure Statement Order, and the Voting Declaration, Class 1 is unimpaired under the Plan.[14] Pursuant to Bankruptcy Code § 1126(f), Holders of Claims in unimpaired Classes are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan.

The Debtor solicited acceptances and rejections of the Plan from Holders of all Impaired Classes in Classes 2, 3, and 4 (the "Voting Classes").[15] Bankruptcy Code §§ 1126(c) and (d) specify the requirements for acceptance of a plan by a class of claims and interests. Specifically, section 1126 provides that:

> (c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity, designated under subsection (e) of [section 1126], that have accepted or rejected such plan.[16]
>
> (d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under

[13] 11 U.S.C. § 1126.

[14] *See, e.g.*, Plan, Arts. III and IV.

[15] *See* Plan, Art IV.

[16] 11 U.S.C. § 1126(c).

> subsection (e) of [section 1126], that have accepted or rejected such plan.[17]

As evidenced by the Voting Declaration, the Plan has been accepted by each of the Voting Classes. Based on the foregoing, the Debtor's solicitation of votes was taken in conformity with Bankruptcy Code § 1126.

### C. The Plan Was Proposed in Good Faith and not by any Means Forbidden by Law (Bankruptcy Code § 1129(a)(3)).

Bankruptcy Code §1129(a) compels a bankruptcy court to reject a plan if it is not proposed in "good faith" or is "forbidden by law."[18] The Second Circuit has construed the good faith standard as requiring a showing that "the plan was proposed with 'honesty and good intentions' and 'with a basis for expecting that the reorganization can be effected.'"[19] Additionally, courts generally hold that "good faith" should be evaluated in light of the totality of the circumstances surrounding confirmation.[20] The bankruptcy judge is in the best position to assess the good faith of the parties' proposals.[21]

Here, the Debtor has proposed the Plan with honesty, good intentions, and a desire to effectuate a full, fair, and feasible payment structure for the Debtor's liabilities while maximizing value for the benefit of all stakeholders. Throughout the Case, the Debtor has upheld its fiduciary duties to stakeholders and creditors by coordinating with the Committee and seeking the prompt

---

[17] 11 U.S.C. § 1126(d).

[18] 11 U.S.C. § 1129(a)(3).

[19] *Johns-Manville*, 843 F.2d at 649 (citations omitted); *see also In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008) ("Under § 1129(a)(3), a plan will be found in good faith if it 'was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.'").

[20] *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 312 (Bankr. S.D.N.Y. 2016).

[21] *See In re Ditech Holding Corp.*, 606 B.R. 544, 579 (Bankr. S.D.N.Y. 2019) (citation omitted).

liquidation of the Debtor's assets and confirmation of a Plan for the benefit of all creditors. Importantly, the Plan has been overwhelmingly accepted by each of the Voting Classes. Accordingly, the Debtor submits that the Plan was proposed in good faith and satisfies all of the requirements of Bankruptcy Code § 1129(a)(3).

### D. The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (Bankruptcy Code § 1129(a)(4)).

Bankruptcy Code § 1129(a)(4) subjects certain fees and expenses paid by a debtor to a reasonableness requirement. In particular, Bankruptcy Code § 1129(a)(4) requires that "any payment made or to be made" as part of the plan is "subject to approval of, the court as reasonable."[22] It is generally recognized that "[t]he requirements under section 1129(a)(4) are two-fold. First, there must be disclosure. Second, the court must approve the reasonableness of the payment."[23] The determination of whether a payment is reasonable under Bankruptcy Code § 1129(a)(4) requires an analysis of reasonableness based on the facts and circumstances of the payments. As one Court noted, the issue of reasonableness:

> will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate. In the typical case, payments that are not payable from, or reimbursable by, the bankruptcy estate should not engender anything like the judicial scrutiny devoted to those that are payable out of the bankruptcy estate.[24]

The Debtor submits that the fees and expenses incurred by its professionals were reasonably incurred. Moreover, the proposed confirmation order provides that all requests for the payment of professionals must be filed by a date certain. After notice and a hearing in accordance

---

[22] *See* 11 U.S.C. § 1129(a)(4).

[23] *See* 7 Collier on Bankruptcy ¶1129.03[4].

[24] I*n re Journal Register Co.,* 407 B.R. 520 at 537-38 (Bankr. S.D.N.Y. 2009) (*quoting Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 517 (5th Cir. 1998), *cert. denied,* 526 U.S. 1144 (1999)).

with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of professional fees and expenses shall be determined by the Bankruptcy Court.

Here, pursuant to the Plan, all payments made by the Debtor for services, costs, or expenses in connection with the Chapter 11 case before the Effective Date, including all claims of retained estate professionals, must be approved by, or are subject to approval of the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(4).

**E. The Debtor Has Properly Disclosed Post-Emergence Directors and Officers and their Appointment is Consistent with Public Policy (Bankruptcy Code § 1129(a)(5)).**

Bankruptcy Code § 1129(a)(5)(A) requires that, before Confirmation, the proponent of a plan must disclose the identities and affiliations of the proposed directors and officers of the reorganized Debtor and that the appointment or continuance of such directors and officers be consistent with the interests of creditors and equity security holders and with public policy.[25] In addition, Bankruptcy Code § 1129(a)(5)(B) requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider." [26]

Bankruptcy Code § 1129(a)(5)(A)(i) is inapplicable in this case as the Plan provides for the liquidation of the Assets pursuant to the terms of the Litigation Trust Agreement. However, the Plan and the Litigation Trust Agreement appoint and disclose Luke Furler as Litigation Trustee to facilitate the liquidation and distribution of the Assets, as well as the initial members of the Litigation Trust Oversight Committee.[27]

---

[25] 11 U.S.C. § 1129(a)(5)(A).

[26] *Id.* § 1129(a)(5)(B).

[27] *See* Litigation Trust Agreement (ECF Doc. No. 78-1).

### F. The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (Bankruptcy Code § 1129(a)(6)).

Bankruptcy Code § 1129(a)(6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.[28] The Plan does not provide for any rate changes and, thus, Bankruptcy Code § 1129(a)(6) is inapplicable here.

### G. The Plan is in the Best Interests of Creditors and Interest Holders (Bankruptcy Code § 1129(a)(7)).

The "best interests of creditors" test of Bankruptcy Code § 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.[29] Put differently, the best interests test is satisfied where the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation are less than or equal to the estimated recoveries for a holder of an impaired claim or interest under the Debtor's plan of reorganization that rejects the plan.[30] By its express terms, Bankruptcy Code § 1129(a)(7) does not apply to unimpaired classes under the Plan, and the best interests test is satisfied to the extent each holder of an impaired class of claims or interests has voted to accept the Plan.[31]

---

[28] 11 U.S.C. § 1129(a)(6).

[29] 11 U.S.C. § 1129(a)(7); *Adelphia Confirmation Decision,* 368 B.R. at 251.

[30] *Adelphia Confirmation Decision,* 368 B.R. at 252 ("In determining whether the best interests standard is met, the court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7.").

[31] 11 U.S.C. § 1129(a)(7)(A).

In this case, the Plan satisfies the best interests test because it provides for an orderly liquidation of the Debtor's assets through the creation of the Litigation Trust, and providing for the same distribution scheme that would be likely to be used in a chapter 7 case. As described in the Disclosure Statement, the Plan provides all parties with the same or greater recoveries than they would receive in a hypothetical chapter 7 liquidation by eliminating potential administrative expenses arising from the appointment of a chapter 7 trustee.

**H. Acceptance by Impaired Classes (Bankruptcy Code § 1129(a)(8)).**

Bankruptcy Code § 1129(a)(8) requires that each class of claims or interests must either accept the plan or be unimpaired thereby.[32] Pursuant to Bankruptcy Code § 1126(c), a class of *claims* accepts a plan if holders of at least two-thirds in amount and more than one-half in number of the allowed claims in that class vote to accept the plan.[33] Pursuant to Bankruptcy Code § 1126(d), a class of *interests* accepts a plan if holders of at least two-thirds in amount of the allowed interests in that class vote to accept the plan.[34] A class that is not impaired under a plan, and each holder of a claim or interest in such a class, is conclusively presumed to have accepted the plan.[35] On the other hand, a class is deemed to have rejected a plan if the plan provides that the claims or interests of that class do not receive or retain any property under the plan on account of such claims or interests.

As set forth above and as evidenced in the Voting Declaration, each of the Voting Classes

[32] 11 U.S.C. § 1129(a)(8).

[33] *Id.* § 1126(c).

[34] *Id.* § 1126(d).

[35] *Id.* § 1126(f); *see also In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted the plan); S. Rep. No. 989, 95th Cong. 2d Sess. 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan.").

has voted to accept the Plan. Thus, the requirements of Bankruptcy Code § 1129(a)(8) are satisfied.

### I. The Plan Complies with Statutorily-Mandated Treatment of Administrative and Priority Tax Claims (Bankruptcy Code § 1129(a)(9)).

Bankruptcy Code § 1129(a)(9) requires that claims entitled to priority under Bankruptcy Code § 507(a) be paid in full, in cash, unless the holder thereof agrees to a different treatment with respect to such claims.[36] In accordance therewith, the Plan provides that Allowed Administrative Claims and Priority Tax Claims will be paid as soon as reasonably practicable after the Effective Date, or upon such other terms as may be agreed to by the holder of such claim and the Litigation Trustee.[37] In accordance therewith, the Plan provides that Allowed Administrative Expense Claims and Priority Tax Claims will be paid in full, in cash, or on less favorable terms to which the Litigation Trustee and the claimant agree, on the later of the Effective Date or as soon as practicable after the date such Claim is Allowed.[38]

Accordingly, the Debtor submits that the Plan fully complies and satisfies all of the requirements of Bankruptcy Code § 1129(a)(9).

### J. The Plan Was Accepted by at Least One Impaired Class (Bankruptcy Code § 1129(a)(10)).

Bankruptcy Code § 1129(a)(10) is an alternative requirement to § 1129(a)(8) of the Bankruptcy Code's requirement that each class of claims or interests must either accept a plan or be unimpaired under the Plan. Bankruptcy Code § 1129(a)(10) provides that, if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. Here, because all of the Voting Classes voted to accept the Plan,

[36] 11 U.S.C. § 1129(a)(9).

[37] *See* Plan, Art. II, Para. A.01.

[38] *See* Plan, Art. II, Para. A.01.

Bankruptcy Code § 1129(a)(10) is applicable and has been satisfied.

**K. The Plan is Feasible (Bankruptcy Code § 1129(a)(11)).**

Bankruptcy Code § 1129(a)(11) requires that a plan be feasible to be confirmed. Specifically, the Court must determine, in relevant part, that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[39]

To demonstrate that a plan is feasible, it is not necessary that success be guaranteed; the standard is rather that a debtor must demonstrate a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization.[40]

As set forth in detail in the Disclosure Statement, an analysis of the Plan in the context of this chapter 11 case strongly indicates that the Plan is feasible.[41] The Debtor anticipates that it will have sufficient Cash on hand to make all payments required to be made on the Effective Date under the Plan from two Exit Facilities, copies of which were included with the Plan Supplement. In addition, the Debtor anticipates that the proceeds from the liquidation of the Litigation Trust Assets, as well as the funds from the Exit Facility, will provide sufficient funds to make all payments required by the Plan.

The Debtor has thoroughly analyzed its ability to meet the obligations under the Plan after

[39] 11 U.S.C. § 1129(a)(11).

[40] *See Johns-Manville,* 843 F.2d at 649 ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *see also Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1166 (5th Cir. 1993) ("Only a reasonable assurance of commercial viability is required.") (citation omitted); *In re Broadway Realty I Co., LLC*, 677 B.R. 786, 799 (Bankr. S.D.N.Y. 2026) ("The feasibility standard does not require a guarantee of success, but rather 'the plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed.'").

[41] *See* Disclosure Statement, pg. 44.

the Effective Date, and submits that confirmation of the Plan is not likely to be followed by further liquidation or the need for further reorganization, as the Debtor expects the Plan to be fully consummated upon the Effective Date.

For the foregoing reasons, the Debtor submits that the Plan satisfies the feasibility requirement of Bankruptcy Code § 1129(a)(11).

**L. The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (Bankruptcy Code § 1129(a)(12)).**

Bankruptcy Code § 1129(a)(12) requires the payment of all fees payable under 28 U.S.C. § 1930.[42] The Plan provides that the Litigation Trust will pay all United States Trustee Fees under 28 U.S.C. § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements.[43] The Plan thus complies with the requirements of Bankruptcy Code § 1129(a)(12).

**M. The Plan Provides for the Payment of Retiree Benefits (Bankruptcy Code § 1129(a)(13)).**

Bankruptcy Code § 1129(a)(13) requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with Bankruptcy Code § 1114.[44] Here, there are no retiree benefits that would be required to be continued post-confirmation and, thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(13).

**N. The Plan Satisfies the Requirements Relating to Individual Debtors (Bankruptcy Code § 1129(a)(14)-(15)).**

Bankruptcy Code § 1129(a)(14) requires the payment of certain domestic support

---

[42] 11 U.S.C. § 1129(a)(12).

[43] Plan, Art. II, Para. C.

[44] *See* 11 U.S.C. § 1129(a)(13).

obligations. Here, the Debtor is not an individual and there are no domestic support obligations that the Debtor is obligated to pay. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(14).

Bankruptcy Code § 1129(a)(15) imposes certain payment obligations on individual debtors when the debtor is an individual and in which the holder of an allowed unsecured claim objects to confirmation of the plan. Here, Bankruptcy Code § 1129(a)(15) is deemed satisfied because the Debtor is not an individual.

**O. The Debtor is Not a Nonprofit Entity (Bankruptcy Code § 1129(a)(16)).**

Bankruptcy Code § 1129(a)(16) applies to transfers by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust."[45] The legislative history of section 1129(a)(16) of the Bankruptcy Code demonstrates that this section was intended to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust."[46] Accordingly, Bankruptcy Code § 1129(a)(16) is inapplicable to the Debtor as the Debtor is neither a nonprofit corporation nor a trust.

**P. The Plan Satisfies the "Cram Down" Requirements of 11 U.S.C. § 1129(b).**

Bankruptcy Code § 1129(b) provides that, if a chapter 11 plan satisfies all applicable requirements of section 1129(a) other than section 1129(a)(8)'s requirement that all impaired classes accept the plan, the plan may be confirmed as long as it does not discriminate unfairly and it is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.[47] As discussed above, all of the Voting Classes have voted to accept the

---

[45] 11 U.S.C. § 1129(a)(16).

[46] *See* H.R. Rep. No. 109-31, 109th Cong. 1st Sess. 145 (2005); *In re Sea Launch Co., L.L.C.*, 2010 Bankr. LEXIS 5283 at 41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are not moneyed, business, or commercial.") (internal citation omitted).

[47] 11 U.S.C. § 1129(b)(1); *see also In re 20 Bayard Views, LLC*, 445 B.R. 83, 104 (Bankr. E.D.N.Y. 2011) (If a

Plan and, accordingly Bankruptcy Code § 1129(b) is not necessary to confirm the Plan. Notwithstanding, as set forth below, the Plan would meet the requirements of Bankruptcy Code § 1129(b) even if one of the Voting Classes were deemed by the Court to have rejected the Plan.

**i. The Plan Does Not Discriminate Unfairly.**

The Bankruptcy Code does not set forth any one standard for determining if a plan discriminates unfairly against impaired, rejecting classes.[48] Rather, courts typically examine the facts and circumstances of the particular case to determine whether "unfair discrimination" exists.[49] At a minimum, however, the unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.[50] Courts in the Second Circuit have ruled that

---

Debtor utilizes the cramdown procedure, the plan must satisfy the requirements of Bankruptcy Code 1129(b), meaning that the "'plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.'") (citations omitted); *In re Eletson Holdings Inc*., 664 B.R. 569, 608 (Bankr. S.D.N.Y. 2024) ("[A] Chapter 11 plan can still be confirmed so long as such plan has at least one impaired accepting class, and so long as the plan does not 'discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.'") (citation omitted); *In re Aegerion Pharms., Inc.*, 605 B.R. 22, 31 (Bankr. S.D.N.Y. 2019) (the plan must "not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan").

[48] *See Johns-Manville,* 68 B.R. at 636 ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard . . . ."); *In re Genco Shipping & Trading Ltd*., 513 B.R. 233, 241 (Bankr. S.D.N.Y. 2014) ("Neither the Bankruptcy Code nor legislative history provides clear guidance for determining what constitutes 'unfair discrimination.'"); *In re CE Elec. Contractors, LLC*, No. 21-20211 (JJT), 2022 WL 1420094, at *3 (Bankr. D. Conn. May 4, 2022) ("Without a definition of 'unfair discrimination' under the Bankruptcy Code, '[c]ourts have struggled to give the unfair discrimination test an objective standard.'") (citing 7 Collier on Bankruptcy ¶ 1129.03 (16th ed. 2022)).

[49] *See In re Freymiller Trucking, Inc.,* 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances."); *In re Aztec Co.,* 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination."); *Genco Shipping*, 513 B.R. at 241-242 ("'To determine whether a plan discriminates unfairly, courts consider whether (1) there is a reasonable basis for discriminating, (2) the debtor cannot consummate the plan without the discrimination, (3) the discrimination is proposed in good faith, and (4) the degree of discrimination is in direct proportion to its rationale.'") (citations omitted).

[50] *See In re Klaynberg,* No. 22-10165 (MG), 2023 WL 5426748, at *15-16 (Bankr. S.D.N.Y. Aug. 22, 2023) (classification is rational where classes are comprised of claims of similar legal rights).

"[u]nder section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment."[51]

The Plan does not unfairly discriminate among Impaired Classes of Claims and Interests because Holders of Claims with similar legal rights will not be receiving materially different treatment under the Plan. As described above and in the Disclosure Statement, Novus Partnership Interests have been separately classified from Limited Partnership Claims due to the agreement of the Holders of Class 4 Novus Partnership Interests, prior to the Petition Date, to subordinate their distributions to that of the Holders of Class 3 Limited Partnership Claims. Accordingly, applying the reasonableness standard of Bankruptcy Code § 1129(b), the Plan clearly does not unfairly discriminate among Classes of Claims.

**ii. The Plan is Fair and Equitable.**

Bankruptcy Code §§ 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) set forth the so-called "absolute priority rule." This central tenet of bankruptcy law requires that if the nonconsenting holders of claims or interests in a particular class receive less than full value for their claims or interests, no holders of claims or interests in a junior class may receive any property under the plan.[52] The corollary of the absolute priority rule is that, if the holders of claims or interests in a particular class receive less than full value for their claims or interests, then senior classes cannot receive more than a 100% recovery for their claims or interests.[53]

---

[51] *Sabine Oil*, 555 B.R. at 316 ("Courts in the Second Circuit have ruled that '[u]nder section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.'"). *See also In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990) (courts assess whether "(i) there is a reasonable basis for discriminating, (ii) the debtor cannot consummate the plan without discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale," but also noting that the second prong assessing whether the debtor cannot consummate the plan without discrimination, is not dispositive of the question of unfair discrimination).

[52] 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

[53] *See In re Granite Broad. Corp.,* 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007) ("There is no dispute that a class of

Here, the Plan provides that payments made under the Plan will be paid primarily from (i) the Exit Facility, and (ii) the liquidation of the Litigation Trust Assets. Those payments will be made to creditors in accordance with the absolute priority rule. Therefore, the Plan is fair and equitable under Bankruptcy Code § 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii).

### Q. The Plan is the Only Plan Filed in the Chapter 11 Case (Bankruptcy Code § 1129(c)).

Section 1129(c) of the Bankruptcy Code provides that, with a limited exception, a bankruptcy court may only confirm one plan. Here, the Plan is the only chapter 11 plan that has been filed in the Debtor's case and is the only plan that satisfies the requirements of subsections (a) and (b) of Bankruptcy Code § 1129. Accordingly, the requirements of Bankruptcy Code § 1129(c) are satisfied.

### R. The Principal Purpose of the Plan is Not Avoidance of Taxes (Bankruptcy Code § 1129(d)).

Bankruptcy Code § 1129(d) states "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[54] The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, but rather to liquidate the Debtor's Assets, pursuant to the Plan and the Litigation Trust Agreement, and make distributions to the Debtor's creditors. Moreover, no governmental unit, or any other party, has thus far raised any objection to the Plan on these grounds, and the Debtor does not anticipate any such objections will be filed. The Debtor therefore submits that the Plan satisfies the requirements of Bankruptcy Code § 1129(d).

---

creditors cannot receive more than full consideration for its claims, and that excess value must be allocated to junior classes of debt or equity, as the case may be.").

[54] 11 U.S.C. § 1129(d).

## II. The Discretionary Contents of the Plan are Appropriate and Should be Approved.

Bankruptcy Code § 1123(b) identifies additional provisions that may be included in a chapter 11 plan. For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases. A plan may also provide for (a) "the settlement or adjustment of any claim or interest belonging to the debtor or the estate" or (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purposes, of any such claim or interest."[55] Lastly, a plan may "modify the rights of holders of secured claims…or…unsecured claims, or leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[56]

The Plan includes certain such additional provisions. For example, the Plan provides that certain Classes of Claims and Interests are unimpaired while leaving others impaired.[57] The Plan also proposes treatment for Executory Contracts and Unexpired Leases, with all such contracts and leases to be rejected.[58] In addition, the Plan seeks to implement certain exculpation and injunction provisions in favor of the parties that have made significant contributions to the success of this case.[59]

### A. The Plan Settlement of Claims and Controversies is Fair and Equitable and Should Be Approved.

The Plan constitutes a good faith compromise and settlement pursuant to Bankruptcy Code

[55] 11 U.S.C. § 1123(b)(3)(A)-(B).

[56] 11 U.S.C. § 1123(b)(5)-(6).

[57] Classes 2, 3, and 4 are impaired, and Class 1 is unimpaired. *See* Plan, Art. III.

[58] *See* Plan, Art. VI.

[59] *See* Plan, Art. X.

§ 1123(b)(3)(A) and Bankruptcy Rule 9019(a) of all Claims and Interests and controversies resolved pursuant to the Plan.[60] This settlement, as reflected in the relative distributions and recoveries under the Plan, (a) saves the Debtor's estate the costs and expenses of prosecuting disputes, the outcome of which is likely to consume substantial resources of the Debtor's estate and require substantial time to adjudicate, and (b) facilitates the creation and implementation of the Plan, which benefits the Debtor's estate, stakeholders and all parties in interest.

**B. The Plan's Injunction and Exculpation Provisions are Appropriate and Should Be Approved.**

The Plan provides for an injunction precluding holders of Claims from asserting their Claims against the Debtor's assets and the exculpation of Claims for certain parties in connection with solicitation and Confirmation.

**i. Releases.**

The Plan does not provide for any third-party releases.

**ii. Injunction.**

Pursuant to its terms, the Plan permanently enjoins all persons and entities from bringing any action that is released pursuant to the Plan or the Confirmation Order (the "Injunction").[61] Specifically, pursuant to the Injunction all persons and entities will be permanently enjoined from bringing any actions against the Debtor's estate or Litigation Trust on account of any Claim or Interest that accrued prior to the Confirmation Date. Importantly, the injunction does not protect any third parties from any claims, and does not apply to the enforcement of police or regulatory powers of government entities.

[60] *See* Plan, Art. X.

[61] *See* Plan, Art. X.

The Injunction is necessary to effectuate the Plan's releases and to protect the Debtor's estate and Litigation Trust from potential litigation from prepetition creditors as the Litigation Trustee implements the provisions of the Plan after confirmation. Such litigation would hinder the efforts of the Litigation Trustee to effectively fulfill his responsibilities as contemplated in the Plan and thereby maximize value for all holders of Claims and Interests. The Injunction is also narrowly tailored to achieve its purpose and similar (and often broader) injunctions have been approved by courts in other chapter 11 cases.[62] Accordingly, the Debtor submits that the Injunction should be approved.

**iii. Exculpation.**

Article X of the Plan also sets forth an exculpation provision (the "Exculpation") with respect to certain parties that were integral in the formulation of the Plan.[63] Courts evaluate exculpation provisions based upon a number of factors, including whether the beneficiaries of the exculpation have participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan.[64] Unlike a release, the effect of an appropriate exculpation provision is not to eliminate a cause of action, but rather to set a standard of care of

---

[62] *See, e.g., DBSD,* No. 09-13061 (Bankr. S.D.N.Y. Nov. 23, 2009; *DJK*, No. 08-10375 (Bankr. S.D.N.Y. May 7, 2008); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. Dec. 19, 2007); *Bally Total Fitness*, 2007 WL 2779438, at *8 (finding that the exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan).

[63] Pursuant to the Plan, the Exculpation applies to the Debtor's Chief Restructuring Officer, the members of the Committee, and both the Debtor and the Committee's respective professionals, agents, successors and assigns.

[64] *See In re Bearing Point, Inc,* 435 B.R. 486, 494 (Bankr. S.D.N.Y. 2011) ("Exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures . . . seek vengeance against other parties; or simply wish to second guess the decision makers"); *In re Bally Total Fitness*, 2007 WL 2779438, at *8 (finding exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan); *In re WorldCom, Inc.*, No. 02-13533, 2003 WL 23861928, at *28 (Bankr. S.D.N.Y. Oct. 31, 2003) (approving an exculpation provision where it "was an essential element of the [p]lan formulation process and negotiations"); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 503 (S.D.N.Y. 2005 excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition").

gross negligence or willful misconduct in future litigation for those acts arising out of the restructuring.[65] Additionally, where a court finds that a plan has been proposed in good faith and meets the other requirements of confirmation, approval of an exculpation provision is appropriate, and sets the standard of liability for those involved in the negotiation and formulation of that plan.[66] Exculpation clauses appropriately prevent collateral attacks against parties that have acted in good faith to help facilitate a debtor's reorganization. Courts have specified certain parties that generally are appropriate candidates for exculpation, including where the exculpation is consensual and properly noticed or parties to "unique transactions" who "contribute substantial consideration to the reorganization."[67]

Here, the exculpation provision is narrowly tailored to solely provide exculpation to parties (and their professionals) that actively participated in the chapter 11 case and the preparation and implementation of the Plan. As both the Debtor and the Committee have noted on the record of several prior hearings before the Court, the parties have worked collaboratively throughout this chapter 11 case to ensure that the Plan maximizes value to, and protects the rights of, all stakeholders. Based on the foregoing, the Debtor submits that the Exculpation provision of the Plan should be approved.

---

[65] *See In re Calpine Corp.,* 2007 WL 4565223, at *10 (finding that an exculpation provision that did not relieve any party of liability for gross negligence or willful misconduct and was appropriate); *Enron*, 326 B.R. at 501 (holding that an exculpation provision was appropriate where such provision excluded gross negligence and willful misconduct).

[66] *See WorldCom*, 2003 WL 23861928, at *28.

[67] *See Adelphia Confirmation Decision*, 368 B.R. at 268.

## CONCLUSION

For the reasons set forth herein, the Plan satisfies fully all applicable requirements of the Bankruptcy Code. Therefore, the Debtor respectfully requests that the Court confirm the Plan pursuant to Bankruptcy Code § 1129.

Dated: Jericho, New York
September 11, 2026

**RIMON P.C.**
Attorneys for Debtor *Mars FX US LP*

By: *s/ Brian Powers*
Brian Powers
Partner
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300